

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Consumer Financial Protection Bureau,
    Plaintiff,

    v.

Orion Processing, LLC, a Texas limited
    liability company,
        d/b/a World Law Processing, Wld
        Credit Repair, and World Law
        Debt;

Family Capital Investment &
    Management LLC, a Delaware limited
    liability company,
        a/k/a FCIAM Property
        Management;

World Law Debt Services, LLC, a
    Delaware limited liability company;

World Law Processing, LLC, a Delaware
    limited liability company;

Derin Scott, an individual;

David Klein, an individual; and

Bradley James Haskins, individually and
    d/b/a World Law Group, LLP, World
    Law Group America, LLP, WLD Price
    Global, Inc., World Law Forms and
    Mediation, and World Law South;
        Defendants,

Shannon Scott, and individual,
        Relief Defendant.

Case No. 15 - 23070 CIV-COOKE

FILED by RR D.C.

AUG 17 2015

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

TORRES

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF
### (FILED UNDER TEMPORARY SEAL)

The Consumer Financial Protection Bureau (Bureau) brings this complaint against Defendants Orion Processing, LLC d/b/a World Law Processing, World Credit Repair and World Law Debt; Family Capital Investment & Management LLC a/k/a FCIAM Property Management; World Law Debt Services, LLC; World Law Processing, LLC; Derin Scott; David Klein; and Bradley James Haskins, individually and d/b/a as World Law Group, LLP, World Law Group America, LLP, WLD Price Global, Inc., World Law Forms and Mediation, and World Law South. Together, these entities and individuals are referred to as "Defendants" or "World Law" herein. The Bureau also brings this complaint against Shannon Scott as Relief Defendant. The Bureau alleges the following:

## INTRODUCTION

1.     Defendants operate a debt relief business that takes exorbitant, illegal upfront fees from vulnerable consumers suffering financial difficulties. Defendants solicit consumers with large debts, promising that Defendants' lawyers will negotiate affordable repayments with consumers' creditors and provide legal representation, including by local counsel, if consumers stop paying their creditors and instead pay Defendants.

2.     Defendants have collected at least $67 million in unlawful fees from consumers before settling their debts—which Defendants often fail to settle at all. Defendants also fail to provide consumers with the legal representation they promise.

3.     The Bureau brings this action under Sections 1031(a), 1036(a), 1054, and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a), 5564(a), and 5581, and under the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6102(c)(2), 6105(d), based on Defendants' violations of the CFPA and the Telemarketing Sales Rule (TSR), 16 C.F.R. pt. 310, in connection with the marketing and sale of debt relief services.

## JURISDICTION AND VENUE

4.     This Court has subject-matter jurisdiction over this action because the action is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

5.     This Court has personal jurisdiction over Defendants because the causes of action arise from Defendants' transacting business in this District or have caused injury in this District through acts or omissions occurring outside of this District.

6.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and 12 U.S.C. § 5564(f).

## PLAINTIFF

7.     The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer financial products or services under Federal consumer financial laws. 12 U.S.C. § 5491(a). The Bureau has independent litigating authority, 12 U.S.C. § 5564(a)-(b), including the authority to enforce the TSR as it applies to persons subject to the CFPA, 15 U.S.C. §§ 6102(c)(2), 6105(d); 12 U.S.C. § 5531(a).

## DEFENDANTS

### Business Entities

8.     Defendant Orion Processing, LLC d/b/a World Law Processing, Wld Credit Repair, and World Law Debt (referred to collectively as Orion), is a Texas limited liability company.  Its principal place of business is at 9011 Mountain Ridge Drive, Austin, Texas 78759.  Orion offers and provides debt relief services, as defined in the TSR, 16 C.F.R. § 310.2(m) (2010), and financial advisory services within the meaning of the CFPA, 12 U.S.C. § 5481(15)(A)(viii).  Orion is a "covered person" under the CFPA because:

    a. Orion engages in the offering or providing of consumer financial services through the provision of financial advisory services, including services to assist consumers settle debts; and/or

    b. Orion is a service provider that (1) participates in designing, operating, or maintaining  the provision of financial advisory services, including services to assist consumers settle debts, or (2) processes transactions relating to the

3

provision of financial advisory services, including services to assist consumers settle debts, and is an affiliate providing services to a covered person.

9.  At all times material to this Complaint, Orion transacts or has transacted business with consumers residing in the Southern District of Florida.

10.     Defendant Family Capital Investment & Management LLC a/k/a FCIAM Property Management (FCIAM) is a Delaware limited liability company.  Its principal place of business is also 9011 Mountain Ridge Drive, Austin, Texas 78759.  FCIAM offers and provides debt relief services, as defined in the TSR, 16 C.F.R. § 310.2(m) (2010), and financial advisory services within the meaning of the CFPA, 12 U.S.C. § 5481(15)(A)(viii).  FCIAM is a "covered person" under the CFPA because:

a.  FCIAM engages in the offering or providing of consumer financial services through the provision of financial advisory services, including services to assist consumers settle debts; and/or

b.  FCIAM is a service provider that (1) participates in designing, operating, or maintaining  the provision of financial advisory services, including services to assist consumers settle debts, or (2) processes transactions relating to the provision of financial advisory services, including services to assist consumers settle debts, and is an affiliate providing services to a covered person.

11.  At all times material to this Complaint, FCIAM transacts or has transacted business with consumers residing in the Southern District of Florida.

12.  Defendant World Law Debt Services, LLC is a Delaware limited liability company that is owned by or under common ownership with "World Law Group," a purported consortium of international law firms.  World Law Debt Services, LLC offers and provides debt relief services, as defined in the TSR, 16 C.F.R. § 310.2(m) (2010), and financial advisory services within the meaning of the CFPA, 12 U.S.C. § 5481(15)(A)(viii).  World Law Debt Services, LLC is a "covered person" under the CFPA because:

a.  World Law Debt Services, LLC engages in the offering or providing of consumer financial services through the provision of financial advisory services, including services to assist consumers settle debts; and/or

b.  World Law Debt Services, LLC is a service provider that (1) participates in designing, operating, or maintaining  the provision of financial advisory

4

services, including services to assist consumers settle debts, or (2) processes transactions relating to the provision of financial advisory services, including services to assist consumers settle debts, or (2) processes transactions relating to the provision of financial advisory services, including services to assist consumers settle debts, and is an affiliate providing services to a covered person.

13.     At all times all times material to this Complaint, World Law Debt Services, LLC transacts or has transacted business with consumers residing in the Southern District of Florida.

14.     Defendant World Law Processing, LLC is a Delaware limited liability company that is owned by or under common ownership with "World Law Group," a purported consortium of international law firms. World Law Processing, LLC offers and provides debt relief services, as defined in the TSR, 16 C.F.R. § 310.2(m) (2010), and financial advisory services within the meaning of the CFPA, 12 U.S.C.§ 5481(15)(A)(viii). World Law Processing, LLC is a "covered person" under the CFPA because:

a.  World Law Processing, LLC engages in the offering or providing of consumer financial services through the provision of financial advisory services, including services to assist consumers settle debts; and/or

b.  World Law Processing, LLC is a service provider that (1) participates in designing, operating, or maintaining  the provision of financial advisory services, including services to assist consumers settle debts, or (2) processes transactions relating to the provision of financial advisory services, including services to assist consumers settle debts, and is an affiliate providing services to a covered person.

15.     At all times material to this Complaint, World Law Processing, LLC transacts or has transacted business with consumers residing in the Southern District of Florida.

***Individuals***

*<u>Bradley James Haskins:</u>*

16.     Defendant Bradley Haskins holds himself out as the "Chairman" of World Law Group and is a licensed attorney in Texas.  He is a principal and manager of World Law Debt Services, LLC and World Law Processing, LLC. At all times material to this complaint, acting alone or in concert with others, Defendant Haskins has formulated, directed, controlled, or participated in the acts and practices of World Law Group, LLP;

World Law Debt Services, LLC, World Law Processing, LLC, World Law Group America, LLP; WLD Price Global, Inc.; World Law Forms and Mediation; and World Law South (collectively referred to as "WLG")

17.    WLG purports to be a consortium of international law firms with its principal places of business located at 110 Wall Street, New York, New York 10005, and 5214 SW 91st Street Terrace, Suite A, Gainesville, Florida 32608.

18.    At all times material to this complaint, acting alone or in concert with others, Defendant Haskins has materially participated in, committed, and/or engaged in the acts and practices set forth in this Complaint.

19.    Given his status as an officer or employee charged with managerial responsibility for World Law Debt Services, LLC and World Law Processing, LLC, Defendant Haskins is a "related person under the CFPA. 12 U.S.C. § 5481(25). Because of his status as a "related person" under the CFPA, Haskins is a "covered person" under the CFPA. *Id*. Defendant Haskins is also a "covered person" under the CFPA because:

    a. He engages in the offering or providing of consumer financial services through his provision of financial advisory services, including services to assist consumers settle debts; and/or

    b. He is a service provider that (1) participates in designing, operating, or maintaining the provision of financial advisory services, including services to assist consumers settle debts, or (2) processes transactions relating to the provision of financial advisory services, including services to assist consumers settle debts, and is an affiliate providing services to a covered person.

20.    At all times material to this Complaint, Defendant Haskins has transacted business in the Southern District of Florida.  In addition, Defendant Haskins resides in the Southern District of Florida.

*Derin Scott:*

21.    Defendant Derin Scott is the sole owner, President, and Chief Executive Officer of Orion and FCIAM.  He was also the owner of the now-dissolved marketing arm for Orion—Swift Rock Financial, Inc.—which also did business under the assumed name "World Law Debt."

22.    Defendant Scott is the signatory on accounts for Orion, FCIAM, and other non-debt settlement entities that have received proceeds from the operation.

23.     At all times material to this complaint, acting alone or in concert with others, Defendant Scott has materially participated in, committed, and/or engaged in the acts and practices set forth in this Complaint.

20. Given his status as an officer or employee charged with managerial responsibility, Defendant Scott is a "related person" under the CFPA. 12 U.S.C. § 5481(25). Because of his status as a "related person" under the CFPA, Defendant Scott is a "covered person" under the CFPA. *Id.* Defendant Scott is also a "covered person" under the CFPA because:

a. He engages in the offering or providing of consumer financial services through his provision of financial advisory services, including services to assist consumers settle debts; and/or

b. He is a service provider that (1) participates in designing, operating, or maintaining the provision of financial advisory services, including services to assist consumers settle debts, or (2) processes transactions relating to the provision of financial advisory services, including services to assist consumers settle debts, and is an affiliate providing services to a covered person.

24.     At all times material to this Complaint, Defendant Scott has transacted business in the Southern District of Florida.  In addition, Scott resides in the Southern District of Florida.

*David Klein:*

25.     Defendant David Klein is the Chief Operating Officer of Orion and FCIAM.

26.     Defendant Klein is the signatory on accounts for Orion, FCIAM, and many of Defendant Scott's non-debt settlement entities that have received proceeds from the operation.

27.     At all times material to this complaint, acting alone or in concert with others, Defendant Klein has materially participated in, committed, and/or engaged in the acts and practices set forth in this Complaint.

28.     Given his status as an officer or employee charged with managerial responsibility, Defendant Klein is a "related person" under the CFPA. 12 U.S.C. § 5481(25). Because of his status as a "related person" under the CFPA, Defendant Klein is a "covered person" under the CFPA. *Id.* Defendant Klein is also a "covered person" under the CFPA because:

a.  He engages in the offering or providing of consumer financial services through his provision of financial advisory services, including services to assist consumers settle debts; and/or

b.  He is a service provider that (1) participates in designing, operating, or maintaining the provision of financial advisory services, including services to assist consumers settle debts, or (2) processes transactions relating to the provision of financial advisory services, including services to assist consumers settle debts, and is an affiliate providing services to a covered person.

29.     At all times material to this Complaint, Defendant Klein has transacted business in the Southern District of Florida.

### Relief Defendant

30.     Relief Defendant Shannon Scott is the wife of Defendant Derin Scott and is a signatory on accounts for numerous Orion entities and on accounts in the names of Derin Scott's minor children who also receive regular payments from Orion.

31.     Relief Defendant Shannon Scott has received funds or assets that can be traced directly to Defendants' unlawful acts and practices alleged below.

32.     Relief Defendant Shannon Scott has no legitimate claim to those funds.

### Common Enterprise

33.     At all times material to this complaint, Defendants have operated as a common enterprise while engaging in the violation of Federal consumer financial law set forth below.  Defendants have conducted the business practices described below through an interrelated network of companies that have common business functions, employees, and office locations.  Moreover, Defendants have also commingled funds and shared operations and proceeds of the unlawful activity.  Because Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.

## FACTS

### Overview

34.     Defendants Derin Scott and David Klein have run a debt-relief operation purporting to settle consumers' debts since at least 2008.  They have operated through

8

Scott's companies, Orion (previously Swift Rock) and FCIAM, and charged consumers up-front fees.

35.    In October 2010, the Federal Trade Commission responded to the proliferation of abusive and deceptive practices in the debt relief sector by amending the TSR to, among other things, prohibit debt relief companies engaged in telemarketing from requesting or receiving advance fees before renegotiating, settling, reducing, or otherwise altering the terms of at least one of a consumer's debts.

36.    In or around July 2010, right before the TSR's advance-fee ban went into effect Defendants developed a plan to avoid the advance-fee ban by continuing operations under the guise of providing legal services. To that end, Defendants Scott, Klein, Orion, and FCIAM partnered with Defendant Haskins and WLG. Their agreement provided that WLG would provide "legal representation" and Orion would perform "processing services" for clients seeking debt relief services.

37.    Defendants then began promising consumers both debt relief services and legal representation, including by a local attorney, claiming to employ lawyers in every state. They also touted that consumers would receive the skill and expertise of a licensed lawyer to negotiate with creditors regarding their unsecured debts.

38.    In reality, Defendants do not provide the promised legal representation. Consumers rarely, if ever, communicate with a lawyer and the vast majority of services provided–if services are provided at all – are debt relief services provided by non-lawyers.

39.    Defendants withdraw hundreds of dollars in advance fees from consumers' accounts each month.

40.    Defendants have charged advance fees to **99%** of the consumers enrolled in the World Law program before settling their debts.

### *Marketing the Program*

41.    Defendants market the World Law program through third party marketing companies, using television commercials, radio advertisements, targeted mailers, billboards, search engine optimization programs (SEO's), and websites.

42.   Defendants' marketing includes claims that consumers will be assigned a "team of attorneys" and be represented by a "debt relief law firm" and have a local attorney or "personally assigned state attorney."

43.   Defendants' advertisements contain toll-free telephone numbers for consumers to call to speak with sales representatives trained to promote Defendants' debt relief services.

44.   The sales representatives, referred to as "Enrollment Specialists," work for third-party marketing companies and use pitch materials vetted and approved by Defendants.

45.   During these pitch calls, the Enrollment Specialists tell consumers that Defendants' network of attorneys will negotiate settlements of their unsecured debts with creditors so consumers will be able to repay the debt for less than what is owed. Enrollment Specialists also promise consumers local attorney representation and consultation.

46.   The Enrollment Specialists instruct consumers to enter all of their outstanding unsecured debts into the World Law Program.  They also instruct consumers to immediately stop making payments to creditors on any debt entered in the World Law Program, and instead to begin making a single monthly payment into a special purpose account (SPA), ostensibly so that World Law can use it to settle consumers' debts.

### The Contract

47.   The Enrollment Specialists obtain detailed information from consumers about the amount and source of their income and the amount and number of their debts. World Law consumers generally enroll multiple debts in the program, totaling tens of thousands of dollars.

48.   The Enrollment Specialist then enters the consumer's information into World Law's software program, which automatically generates a contract with a proposed monthly payment and program length (typically 24-48 months).

49.   As the final step of the intake call, the Enrollment Specialist asks consumers with internet access to access a web portal and electronically sign a dense, single-spaced contract called the Client Service Agreement (CSA). At least through

10

August 2014, the Enrollment Specialist also asked consumers to sign a contract to open an SPA, into which consumers will make their payments.

50.     The CSA states that "World Law Group," "World Law Debt" and/or "World Law Processing" will provide debt negotiation and settlement services on behalf of the consumer. The contract further states that consumers will be assigned a local attorney to represent them with respect to the attempted negotiation and settlement of their debts and in any creditor suits on a debt enrolled in the World Law program.

### World Law Charges Advance Fees

51.     Defendants take multiple up-front fees from consumers, listed in the "Legal Program Fee Schedule" attached to the CSA.  These fees include:

   a.   "Initial Fees" in the amount $199 that are usually collected from a consumer's account over the first three months of the program;

   b.   "Bundled Legal Service Fees" that range from ten to fifteen percent of the consumer's combined outstanding debts and are usually collected over the first 13 months of the program; and

   c.   "Attorney Monthly Service Fees" in the amount of $84.95 that are collected every month a consumer participates in the program.

52.     If consumers attempt to terminate their relationship with World Law and ask for a refund of the money they have paid, World Law typically makes cancelling very difficult or refuses to provide the requested refund.

### World Law Does Not Provide Legal Representation

53.     Attorneys rarely, if ever, are involved in World Law's promised debt relief services, including negotiating consumers' debts with creditors. And consumers are not assigned or represented by a local attorney, as promised.

54.     In fact, Defendants' marketing agents and employees, not attorneys, perform virtually all of the debt relief work that occurs on behalf of World Law enrollees, if any.  Among other things, non-lawyers:

   a.  Field phone calls from consumers responding to its advertisements;

   b.  Perform consumer intake;

11

    c.  Analyze consumers' budgets to determine the potential savings that consumers may realize as a result of enrolling in the debt relief program;

    d.  Determine consumers' monthly payments;

    e.  Obtain paperwork from consumers to process enrolled debts;

    f.  Set up automatic withdrawals from consumers' bank accounts;

    g.  Negotiate with creditors to facilitate debt relief;

    h.  Determine when to make a settlement offer to creditors;

    i.  Direct and negotiate the allocation and distribution of consumer funds in SPA accounts to Defendants, creditors, and/or other third parties; and

    j.  Handle inquiries or complaints from consumers, the Better Business Bureau, and government agencies.

55.    If debt settlement negotiations fail, and a creditor seeks to collect a debt through litigation, consumers are still not assigned a local attorney.  In fact, consumers rarely, if ever, communicate with a local lawyer.

56.    Instead, non-attorneys at World law provide consumers with boilerplate pleadings that are not customized for the consumer's particular case. Consumers are instructed to sign and file such pleadings and to represent themselves *pro se* at any hearings.

### Consumer Harm

57.    Consumers who stop paying debts as a result of World Law's advice experience significant harm. Their failure to pay their creditors may result in, among other things, a lowered credit score, collection calls, collection suits, and late fees. Few, if any, consumers become debt free as a result of World Law's program.

58.    At least 21,000 consumers have enrolled in World Law's program since October 27, 2010 and have been charged at least $67 million in up-front fees.

### ROLE OF INDIVIDUAL DEFENDANT DERIN SCOTT

59.    Defendant Scott has engaged in the offering or providing of debt relief services through World Law.  He has controlling interests in Orion, FCIAM, and various

non-debt settlement entities that received proceeds from the operation, and is a principal of each.

60.    Among other acts relating to World Law, Defendant Scott oversaw the individuals he appointed to manage the day-to-day operations of Orion and FCIAM. He is a signatory on bank accounts associated with Orion, FCIAM, and various non-debt settlement entities that received proceeds from the operation. Scott was instrumental in the creation of Defendants' debt relief operation and has final authority over the managers of the operation.

### ROLE OF INDIVIDUAL DEFENDANT DAVID KLEIN

61.    Defendant Klein has engaged in the offering or providing of debt relief services by Defendants.  He is a principal of Orion, FCIAM, and various non-debt settlement entities that received proceeds from the operation.

62.    Defendant Klein manages Orion and FCIAM's day-to-day operations. He is the signatory on accounts for Orion, FCIAM, and numerous non-debt settlement entities that received proceeds from the operation.

### ROLE OF INDIVIDUAL DEFENDANT BRADLEY JAMES HASKINS

63.    Defendant Haskins has engaged in the offering or providing of debt relief services through World Law. He is the "Chairman" of WLG.

64.    Defendant Haskins is a principal and manages the day-to-day operations of WLG.  Defendant Haskins also negotiates with third-party companies that market the World Law program to consumers.  He is the signatory on accounts for WLG.

### THE TELEMARKETING SALES RULE

65.    The TSR was promulgated for the explicit purpose of preventing consumer harm from debt relief operations like World Law's. 75 Fed. Reg. 48, 458 (Aug. 10, 2010).  The TSR amendments do not provide an exemption for attorneys practicing law in connection with debt relief.

66.    The TSR, 16 C.F.R. § 310.2(m), defines "debt relief service" as "any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payments or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector."

67.     The TSR, 16 C.F.R. § 310.2(dd), defines "telemarketing" as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call."

68.     The TSR, 16 C.F.R. § 310.2(aa), defines "seller" as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration."

69.     The TSR, 16 C.F.R. § 310.2(cc), defines "telemarketer" as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor."

70.     Defendants are "sellers" or "telemarketers" of "debt relief service," who engage in "telemarketing," as defined in the TSR. 16 C.F.R. § 310.2

71.     The TSR, 16 C.F.R. § 310.4(a)(5)(i), provides that a seller or a telemarketer may not request or receive payment of any fee or consideration for any debt relief service until and unless, among other things, "the seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer" and "the customer has made at least one payment" pursuant to such an agreement or plan.

72.     The TSR, 16 C.F.R. § 310.3(a)(2)(iii), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer.

73.     The TSR, 16 C.F.R. § 310.3(a)(2)(x), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of any debt relief service.

## VIOLATIONS OF THE TSR
## COUNT I

74.     Plaintiff re-alleges Paragraphs 1 –73 and incorporates them herein by reference.

75.     In the course of telemarketing debt relief services from October 27, 2010 to the present, Defendants requested or received payment of fees or consideration from

consumers for debt relief services before: (1) they had renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the consumer; and (2) the consumer had made at least one payment pursuant to that agreement.

76.     Therefore, Defendants' acts or practices violate the TSR, 16 C.F.R. § 310.4(a)(5)(i), and are abusive acts or practices in telemarketing. Because Defendants are "covered persons" their conduct is unlawful under sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).  15 U.S.C. § 6102(c)(2).

## <u>COUNT II</u>

77.     Plaintiff re-alleges Paragraphs 1 – 73 and incorporates them herein by reference.

78.     In numerous instances, in connection with the advertising, marketing, promoting, offering for sale, or sale of debt relief services, Defendants have represented, directly or indirectly, expressly or by implication, that consumers who enroll in Defendants' debt relief program:

a.     will receive legal representation;

b.     will be represented by a local attorney; and/or

c.     will have settlements of their debts negotiated with their creditors by an attorney.

79.     In fact, in numerous instances, consumers do not receive legal representation, are not represented by a local attorney, and do not have settlements of their debts negotiated with their creditors by an attorney.

80.     Therefore, Defendants' representations as described herein violate the TSR, 16 C.F.R. § 310.3(a)(2)(iii) and (x), and are deceptive acts or practices in telemarketing.  Because Defendants are "covered persons" their conduct is unlawful under sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).  15 U.S.C. § 6102(c)(2).

## THE CONSUMER FINANCIAL PROTECTION ACT

81.     Sections 1031 and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1)(B), prohibit covered persons from engaging "in any unfair, deceptive, or abusive act or practice."

82.     Section 1036(a)(1)(A) of the CFPA provides that it is "unlawful for any covered person or service provider to offer or provide to a consumer any financial product or service not in conformity with Federal consumer law, or otherwise commit any act or omission in violation of a Federal consumer financial law." Section 1054(a) of the CFPA grants the Bureau authority to commence a civil action against any person who violates a Federal consumer financial law. The CFPA is a Federal consumer financial law. 12 U.S.C. § 5481(14).

## VIOLATIONS OF THE CFPA
## COUNT III

83.     Plaintiff re-alleges Paragraphs 1 – 64 and incorporates them herein by reference.

84.     In numerous instances, in connection with the advertising, marketing, promoting, offering for sale, or sale of debt relief services, Defendants have represented, directly or indirectly, expressly or by implication, that consumers who enroll in Defendants' debt relief program:

    a.     will receive legal representation;

    b.     will be represented by a local attorney; and/or

    c.     will have settlements of their debts negotiated with their creditors by an attorney.

85.     In fact, in numerous instances, consumers do not receive legal representation, are not represented by a local attorney, and do not have settlements of their debts negotiated with their creditors by an attorney.

86.     Therefore, Defendants' representations are false and misleading, and constitute deceptive acts or practices in violation of Sections 1031 and 1036 of the CFPA, 12 U.S.C §§ 5531, 5536.

87.     Defendants are "covered person[s]," "related persons," and/or "service providers" within the meaning of the CFPA, 12 U.S.C. §§ 5481(6), (25), and (26).

16

### COUNT IV - Against Relief Defendant Only

88.     Relief Defendant Shannon Scott has received, directly or indirectly, funds or other assets from Defendants that are traceable to funds obtained from Defendants' customers through the deceptive and unlawful acts or practices described herein.

89.     Relief Defendant Shannon Scott is not a bona fide purchaser with legal and equitable title to Defendants' customers' funds or other assets, and Relief Defendant will be unjustly enriched if she is not required to disgorge funds or the value of the benefit she received as a result of Defendants' deceptive and unlawful acts or practices.

90.     By reason of the foregoing, Relief Defendant holds funds and assets in constructive trust for the benefit of Defendants' customers.

### CONSUMER INJURY

91.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the TSR and the CFPA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public.

### THIS COURT'S POWER TO GRANT RELIEF

92.     The CFPA empowers this Court to grant any appropriate legal or equitable relief with respect to violations of Federal consumer financial law, including, without limitation, permanent or temporary injunction, rescission or reformation of contracts, the refund of moneys paid, restitution, disgorgement or compensation for unjust enrichment, and civil money penalties.  12 U.S.C. §§ 5538(a) and 5565(a).

### PRAYER FOR RELIEF

93.  Wherefore, the Bureau requests that the Court:

  a.  Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including but not limited to a temporary and preliminary injunctions, an order freezing assets, immediate access to business premises, and appointment of a Receiver;

  b.  Permanently enjoin Defendants from harming consumers through the advertisement, marketing, promotion, offering for sale, or selling of any consumer financial product or service, including but not limited to any debt relief product or service.

  c.  Permanently enjoin Defendants from committing future violations of the CFPA, 12 U.S.C. §§ 5531, 5536, and the TSR, 16 C.F.R. pt. 310;

  d.  Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the CFPA and the TSR, including, but not limited to, rescission or reformation of contracts, the refund of moneys paid, restitution, and disgorgement or compensation for unjust enrichment;

  e.  Award Plaintiff civil money penalties; and

  f.  Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: August 17, 2015

                                        Respectfully submitted,


                                        CARA PETERSEN
                                        Deputy Enforcement Director
                                        For Litigation


                                        JAMES SUGARMAN
                                        Assistant Litigation Deputy
                                        For Litigation
                                        /s/ Laura Schneider
                                        LAURA SCHNEIDER, NY Bar #2715449
                                        S.D. Fla. Bar #77828
                                         (E-mail: laura.schneider@cfpb.gov)
                                         (Phone: 202-435-7311)
                                        WHITNEY CASE, DC Bar #501296
                                        S.D. Fla. Special Bar #A5502103
                                         (E-mail: whitney.case@cfpb.gov)
                                         (Phone: 202-435-7371)
                                        ERIN MARY KELLY, VA Bar #43070
                                        S.D. Fla. Special Bar #A5502102
                                        (Email: erin.kelly@cfpb.gov)
                                        (Phone: 202-435-7367)

                                        1625 I Street, NW
                                        Washington, DC 20006
                                        Fax: (202) 435-7722

                                        Attorneys for Plaintiff
                                        Consumer Financial Protection Bureau