**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 15-23070-Civ-COOKE/TORRES

Consumer Financial Protection Bureau,
Plaintiff,

v.

ORION PROCESSING, LLC, a Texas limited liability company, d/b/a World Law Processing, Wld Credit Repair, and World Law Debt; FAMILY CAPITAL INVESTMENT & MANAGEMENT LLC, a Delaware limited liability company, a/k/a FCIAM Property Management; WORLD LAW DEBT SERVICES, LLC, a Delaware limited liability company; WORLD LAW PROCESSING, LLC, a Delaware limited liability company; DERIN SCOTT, an individual; DAVID KLEIN, an individual; and BRADLEY JAMES HASKINS, individually and d/b/a World Law Group, LLP, World Law Group America, LLP, WLD Price Global, Inc., World Law Forms and Mediation, and World Law South;
Defendants,

Shannon Scott, an individual,

Relief Defendant.

**PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIM**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), Plaintiff, the Consumer Financial Protection Bureau ("Plaintiff" or the "Bureau"), hereby moves to dismiss the Counterclaim filed by Defendants Derin Scott, David Klein, and Relief Defendant Shannon Scott (collectively the "Counterclaiming Defendants") on September 25, 2015 [ECF No. 44]. For the reasons stated herein, the Counterclaim should be dismissed.

Dated: November 24, 2015

Respectfully submitted,

/s/ Jessica Rank Divine

CARA PETERSEN
Deputy Enforcement Director for Litigation

JAMES T. SUGARMAN
Assistant Litigation Deputy for Litigation

LAURA SCHNEIDER, NY Bar # 2715449
S.D. Fla. Bar # 77828
(202) 435-7311
laura.schneider@cfpb.gov

WHITNEY CASE, DC Bar # 501296
S.D. Fla. Special Bar # A5502103
(202) 435-7371
whitney.case@cfpb.gov

MEREDITH FUCHS
General Counsel

TO-QUYEN TRUONG
Deputy General Counsel

JOHN R. COLEMAN
Assistant General Counsel

JESSICA RANK DIVINE
NY Bar # 4544573
S.D. Fla. Special Bar # A5502145
(202) 435-7863
jessica.divine@cfpb.gov

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 15-23070-Civ-COOKE/TORRES

Consumer Financial Protection Bureau,
Plaintiff,

v.

ORION PROCESSING, LLC, a Texas limited liability company, d/b/a World Law Processing, Wld Credit Repair, and World Law Debt; FAMILY CAPITAL INVESTMENT & MANAGEMENT LLC, a Delaware limited liability company, a/k/a FCIAM Property Management; WORLD LAW DEBT SERVICES, LLC, a Delaware limited liability company; WORLD LAW PROCESSING, LLC, a Delaware limited liability company; DERIN SCOTT, an individual; DAVID KLEIN, an individual; and BRADLEY JAMES HASKINS, individually and d/b/a World Law Group, LLP, World Law Group America, LLP, WLD Price Global, Inc., World Law Forms and Mediation, and World Law South;
Defendants,

Shannon Scott, an individual,

Relief Defendant.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIM**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ii

INTRODUCTION 1

BACKGROUND 2

A. The Bureau's Enforcement Authority ... 2

B. The Defendants' Unlawful Debt-Relief Scheme ... 3

C. Orion Processing LLC's Bankruptcy Proceedings ... 3

D. Procedural History ... 4

E. The Counterclaim ... 6

STANDARD OF REVIEW 6

ARGUMENT 7

I. THE COURT LACKS JURISDICTION OVER THE COUNTERCLAIM 7

A. The Counterclaim Challenges Actions "Committed to Agency Discretion by Law" ... 7

B. The Counterclaim Does Not Identify "Agency Action" As Defined in the APA 8

C. The Counterclaim Does Not Identify "Final Agency Action" For Which There Is "No Adequate Remedy in Court" ... 9

D. The Counterclaiming Defendants Lack Standing ... 11

II. THE COUNTERCLAIM ALSO FAILS ON THE MERITS BECAUSE THE BUREAU'S ACTIONS WERE NOT "ARBITRARY AND CAPRICIOUS" 12

CONCLUSION 15

## TABLE OF AUTHORITIES

**CASES** **PAGE**

*Air Brake Sys., Inc. v. Mineta,*
357 F.3d 632 (6th Cir. 2004) .......... 10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......... 6

*Bennett v. Spear,*
520 U.S. 154 (1997) .......... 10

*Better Markets, Inc. v. DOJ,*
83 F. Supp. 3d 250 (D.D.C. 2015) .......... 7

*Brock v. Rusco Indus., Inc.,*
842 F.2d 270 (11th Cir. 1988) .......... 13

*Butler v. Morgan,*
562 Fed. App'x 832 (11th Cir. 2014) .......... 6

*CFTC v. Co Petro Mktg. Grp., Inc.,*
700 F.2d 1279 (9th Cir. 1983) .......... 13

*CFTC v. Offshore Fin. Consultants of Fla., Inc., ,*
No. 02-cv-60769, 2002 WL 1788031 (S.D. Fla. Jun. 5, 2002) .......... 14

*City of Oakland v. Holder,*
901 F. Supp. 2d 1188 (N.D. Cal. 2013) .......... 9, 10

*Conservancy of S.W. Fla. v. U.S. Fish & Wildlife Service,*
677 F.3d 1073 (11th Cir. 2012) .......... 7

*DIRECTV, Inc. v. Brown,*
371 F.3d 814 (11th Cir.2004) .......... 8

*E.F. Hutton & Co., Inc. v. Hadley,*
901 F.2d 979 (11th Cir. 1990) .......... 12

*Friends of the Everglades v. EPA,*
699 F.3d 1280 (11th Cir. 2012) .......... 6

*FTC v. AmeriDebt, Inc.,*
343 F. Supp. 2d 451 (D. Md. 2004) .......... 13

*FTC v. Consumer Health Benefits Ass'n*,
No. 10-cv-3551, 2011 WL 2341097 (E.D.N.Y. Jun. 8, 2011) ........................................ 13

*FTC v. Holiday Enterprises, Inc.*,
No. 1:06-cv-2939, 2008 WL 953358 (N.D. Ga. Feb. 5, 2008)........................................ 13

*FTC v. R.A. Walker & Assocs., Inc.*,
37 B.R. 608 (D.D.C. 1983) ........................................................................................ 14

*FTC v. Standard Oil of Cal.*,
449 U.S. 232 (1980)..................................................................................................... 10

*FuQua v. Massey*,
615 Fed. App'x 611 (11th Cir. 2015) .............................................................................. 6

*Hearst Radio, Inc. v. FCC*,
167 F.2d 225 (D.C. Cir. 1948) ....................................................................................... 7

*Heckler v. Chaney*,
470 U.S. 821 (1985)...................................................................................................7, 8

*In re Commonwealth Cos.*,
913 F.2d 518 (8th Cir. 1990)................................................................................. 13, 14

*In re Lickman*,
297 B.R. 162 (M.D. Fla. 2003) .................................................................................... 12

*In re Selma Apparel Corp.*,
132 B.R. 969 (S.D. Ala. 1991) ..................................................................................... 14

*Invention Submission Corp. v. Rogan*,
357 F.3d 452 (4th Cir. 2004)........................................................................................... 7

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)........................................................................................................ 6

*Lenis v. Attorney General*,
525 F.3d 1291 (11th Cir. 2008) ....................................................................................... 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................................. 11, 12

*Martino v. First Nat'l Bank of Harvey*,
186 B.R. 414 (N.D. Ill. 1995)......................................................................................... 12

*Match-E-Be-Nash-She-Wish Band of Pottawamtomi Indians v. Patchak*,
132 S.Ct. 2199 (2012) .......... 11

*Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Protection*,
474 U.S. 494 (1986) .......... 13

*Movimiento Democracia, Inc. v. Chertoff*,
417 F. Supp. 2d 1350 (S.D. Fla. 2006) .......... 12

*NAACP v. Meese*,
615 F. Supp. 200 (D.D.C. 1985) .......... 10

*Nat'l Parks Conservation Ass'n v. Norton*,
324 F.3d 1229 (11th Cir. 2003) .......... 10

*NLRB v. Evans Plumbing Co.*,
639 F.2d 291 (5th Cir. 1981) .......... 13

*Norton v. Southern Utah Wilderness Alliance*,
542 U.S. 55 (2004) .......... 7

*Ohio v. Kovacs*,
469 U.S. 274 (1985) .......... 14

*R.T. Vanderbilt Co. v. Occupational Safety and Health Review Comm'n*,
708 F.2d 570 (11th Cir. 1983) .......... 12

*SEC v. Morriss*,
No. 4:12-cv-80, 2012 WL 2154903 (E.D. Mo. June 13, 2012) .......... 14

*SEC v. Reynolds*,
No. 3:08-cv-438, 2011 WL 903395 (N.D. Tex. Mar. 16, 2011) .......... 14

*SEC v. Wolfson*,
309 B.R. 612 (D. Utah 2004) .......... 14

*SEC v. Wyly*,
No. 10-cv-5760, 2014 WL 5569363 (S.D.N.Y. Nov. 3, 2014) .......... 14

*Steele v. Nat'l Firearms Act Branch*,
755 F.2d 1410 (11th Cir. 1985) .......... 12

*Tucker v. United States*,
No. 2:12-cv-409, 2013 WL 4498897 (D. Utah Aug. 19, 2013) .......... 9

*United States v. Armstrong*,
517 U.S. 456 (1996) .......... 7

*Young America's Found. v. Gates*,
560 F. Supp. 2d 39 (D.D.C. 2008) .......... 8

**STATUTES**

5 U.S.C. § 551(4) .......... 9

5 U.S.C. § 551(6) .......... 9

5 U.S.C. § 551(8) .......... 9

5 U.S.C. § 551(10) .......... 9

5 U.S.C. § 551(11) .......... 9

5 U.S.C. § 551(13) .......... 9

5 U.S.C. § 701(a)(2) .......... 7, 8

5 U.S.C. § 701(b) .......... 9

5 U.S.C. § 701(b)(2) .......... 9

5 U.S.C. § 702 .......... 7, 9, 12

5 U.S.C. § 704 .......... 9

5 U.S.C. § 706(2)(A) .......... 11

11 U.S.C. § 112(b)(1) .......... 4

11 U.S.C. § 362 .......... 12

11 U.S.C. § 362(b)(4) .......... 12, 14

12 U.S.C. § 5481(14) .......... 2, 8

12 U.S.C. § 5481(19) .......... 8

12 U.S.C. § 5491(a) .......... 2

12 U.S.C. § 5531 .......... 3, 4

12 U.S.C. § 5536 ........................................................................................ 4

12 U.S.C. § 5536(a)(1)(B) ........................................................................3, 4

12 U.S.C. § 5564 ....................................................................................2, 8

12 U.S.C. § 5564(a) ............................................................................2, 7, 14

12 U.S.C. § 5564(a)(1) ..........................................................................2, 14

15 U.S.C. § 6102(c)(2) ...........................................................................2, 8

15 U.S.C. § 6105(d) ...............................................................................2, 8

**REGULATIONS**

16 C.F.R. part 310 .................................................................................2, 4

16 C.F.R. § 310.3(a)(2)(iii) ............................................................................ 2

16 C.F.R. § 310.3(a)(2)(x) ............................................................................. 3

16 C.F.R. § 310.4(a)(5)(i) .............................................................................. 2

**RULES**

Fed. R. Civ. Pro. 12(b)(1) ............................................................................ 6

Fed. R. Civ. Pro. 12(b)(6) ............................................................................ 6

Fed. R. Civ. Pro. 65(b) .............................................................................4, 14

**OTHER AUTHORITIES**

H.R. Rep. No. 95-595, S. Rep. No. 95-989 ................................................... 13

Pub. L. No. 111-23, 124 Stat. 1376, 1376 (2010) ........................................2, 13

U.S. Const., art. II, § 3 .................................................................................. 7

## INTRODUCTION

After the Consumer Financial Protection Bureau (CFPB or Bureau) brought this enforcement action to stop World Law Group's unlawful debt-relief scheme, Defendants Derin Scott, David Klein, and Relief Defendant Shannon Scott (the Counterclaiming Defendants) filed a Counterclaim alleging that the Bureau's statutory authority to enforce Federal consumer financial law was "stayed" by Defendant Orion Processing, LLC's bankruptcy proceedings. The Counterclaim purports to challenge the Bureau's decision to seek injunctive relief as "arbitrary and capricious" agency action under the Administrative Procedure Act (APA) and seeks declaratory relief. The Counterclaim should be dismissed for several reasons.

As a threshold matter, the Court lacks jurisdiction to hear the Counterclaim. The Counterclaiming Defendants cannot invoke APA review because the Bureau's decision to move this Court to stop the World Law debt-relief scheme and to preserve the possibility of consumer redress by freezing the assets of those involved in the scheme is "committed to agency discretion by law." But even if such a decision were not committed to the Bureau's discretion, the Bureau's motion for temporary injunctive relief (and this Court's order granting that motion) is not the type of "agency action" subject to judicial review under the APA. Furthermore, the Counterclaiming Defendants may seek relief from this Court's order by moving the court to modify its temporary injunction; indeed, they have already done so. As a result, the Bureau's request for temporary injunctive relief is not "final agency action for which there is no adequate remedy in court." In any event, the Counterclaiming Defendants lack standing to bring an APA claim because they cannot establish Article III standing and because they are not persons "aggrieved or adversely affected by agency action" within the meaning of any "relevant statute." For this reason, and any of the reasons discussed above, the Counterclaim should be dismissed at the outset.

Even if these threshold flaws in the Counterclaim could be overcome, the Counterclaim should be dismissed on the merits. The Bankruptcy Code's "automatic stay" expressly does not apply to this enforcement action because the Bureau is enforcing the "police and regulatory power" granted to it by statute. The Bureau's actions were not, therefore, void under the Bankruptcy laws or otherwise arbitrary or capricious.

In sum, the Counterclaim should be dismissed.

## BACKGROUND

### A. The Bureau's Enforcement Authority

In response to the recent financial crisis, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act to, among other things, "protect consumers from abusive financial services practices." Pub. L. No. 111-23, 124 Stat. 1376, 1376 (2010). Title X of that Act—known as the Consumer Financial Protection Act—established the Bureau and charged it with responsibility for "regulat[ing] the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. § 5491(a).

To carry out this responsibility, the Bureau is empowered to "commence a civil action" against "any person [who] violates a Federal consumer financial law." *Id.* § 5564(a). Such "Federal consumer financial law[s]" include the two laws at issue in this case: the Consumer Financial Protection Act (CFPA) itself and the Telemarking Sales Rule (TSR), 16 C.F.R. part 310, 12 U.S.C. § 5481(14); *see also* 15 U.S.C. § 6102(c)(2) (stating that any violation of the TSR "shall be treated as a violation of a rule under section 1031 [of the CFPA]"); 15 U.S.C. § 6105(d) (granting the Bureau authority to enforce the TSR under 12 U.S.C. § 5564). The CFPA authorizes the Bureau to "seek all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law." 12 U.S.C. § 5564(a). Similarly, the CFPA vests courts with "jurisdiction to grant any appropriate legal or equitable relief with respect to a violation of Federal consumer financial law." *Id.* § 5565(a)(1).

As discussed more fully in the Complaint, the TSR prohibits sellers or telemarketers of debt-relief services from demanding or receiving fees upfront. Specifically, they may not request or receive advance payment of fees unless "the seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer" and "the customer has made at least one payment" pursuant to such an agreement or plan. 16 C.F.R. § 310.4(a)(5)(i); Compl. ¶ 71. The TSR also prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services "any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer," 16 C.F.R. §

310.3(a)(2)(iii), and "any material aspect of any debt relief service," 16 C.F.R. § 310.3(a)(2)(x). *See* Compl. ¶¶ 72-73. Similarly, the CFPA prohibits covered persons from engaging "in any . . . deceptive . . . act or practice." 12 U.S.C. §§ 5531, 5536(a)(1)(B).

**B. The Defendants' Unlawful Debt-Relief Scheme**

As set forth in the Complaint, the World Law nationwide debt-relief scheme took exorbitant, illegal upfront fees from vulnerable consumers suffering financial difficulties. World Law, operated by Defendants,[1] solicited consumers who had large debts, promising that Defendants' lawyers would negotiate affordable repayments with consumers' creditors and provide legal representation, including by local counsel, if consumers stopped paying their creditors and instead paid Defendants. Compl. ¶ 1-2, 34-60.

In fact, Defendants did not provide the promised legal representation and the vast majority of services—if services were provided at all—were debt-relief services provided by non-lawyers. Compl. ¶ 38. As a result, at least 21,000 consumers have been charged at least $67 million in illegal up-front fees. Compl. ¶ 58. And because Defendants rarely, if ever, settled consumers' debts, consumers who stopped directly paying their creditors as a result of Defendants' advice have experienced, and continue to experience, significant harm, including, among other things, a lowered credit score, collection calls, collection suits, and late fees. Compl. ¶ 57.

In addition to the Bureau's investigation discussed below, the World Law scheme described above has been the subject of numerous state regulatory enforcement actions in North Carolina, Illinois, Oregon, Colorado, and Connecticut. Mot. for TRO, ECF 4, at 28-32 (summarizing cases).

**C. Orion Processing LLC's Bankruptcy Proceedings**

Earlier this year in an unrelated proceeding, Orion Processing filed for Chapter 11 reorganization. *In re Orion Processing, LLC*, No. 15-10279(TMD) (Bankr. W.D. Tex., filed Feb. 27, 2015). The World Law scheme continued despite the bankruptcy proceeding, and on July 20, 2015, the State of Oregon Department of Justice, one of the parties in interest in the bankruptcy proceeding, moved the bankruptcy court to convert the case from Chapter

[1] The term "Defendants" will be used to refer to all of the named defendants collectively but excluding Relief-Defendant Shannon Scott. "Counterclaiming Defendants" will be used to refer to Derin Scott, David Klein, and Shannon Scott, who bring this Counterclaim.

11 reorganization to Chapter 7 liquidation. *Id*. ECF 107 at 3. The motion argued that the World Law scheme continued to operate in violation of state consumer protection and unauthorized practice of law statutes, that Orion was engaging in enormous transfers of assets from Orion to others involved in the scheme, and that liquidation was in "the best interests of creditors and the estate." *Id*. ECF 107 at 3 (quoting 11 U.S.C. § 112(b)(1)). The motion to convert was subsequently joined by the States of Washington, Colorado, Connecticut, Illinois, and North Carolina. *See* Suppl. Mot. for Prelim. Injunction, ECF 23, at 2. On August 20, 2015, the bankruptcy court granted the motion and converted the case to Chapter 7 liquidation. *In re Orion Processing, LLC*, No. 15-10279(TMD) (Bankr. W.D. Tex. Aug. 20, 2015), ECF No. 159. After a two-day bench trial, the bankruptcy court determined that Orion should be liquidated, citing the continuing regulatory problems of Orion, the unexplained interplay between the World Law Group actors, the absence of evidence of any attorneys providing advice to any of the consumers affected by Orion's actions, and the failure of Orion's management to fully investigate years-old regulatory complaints. *See* Suppl. Mot. for Prelim. Injunction, Butler Decl. ECF 23-1, at ¶ 3-4. Following the conversion of the case, the bankruptcy court appointed a Trustee over the Orion bankruptcy estate. *See In re Orion Processing, LLC*, No. 15-10279 (TMD) (Bankr. W.D. Tex. Aug. 22, 2015), ECF No. 164.

**D. Procedural History**

The Bureau commenced this action on August 17, 2015, alleging that Defendants violated sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536, and the TSR, 16 C.F.R. pt. 310, in connection with the marketing and sale of debt relief services. The Complaint seeks, among other things, preliminary and permanent injunctive relief, rescission or reformation of contracts, the refund of monies paid, restitution, disgorgement of ill-gotten monies, and civil money penalties.

When the Bureau filed its Complaint, it also moved *ex parte* for a temporary restraining order under Rule 65(b) of the Federal Rules of Civil Procedure, ECF 4, which the Court granted on August 18, 2015, ECF 12. As explained in the Bureau's Motion for a TRO, its chief concern was that Defendants would divert the assets that could be used to provide redress to victimized consumers. Mot. for TRO, ECF 4, at 27. The Bureau demonstrated that Defendants were likely to dissipate or conceal assets in light of their (1)

continued operation of an unlawful scheme despite state investigations and injunctions from numerous courts; (2) frequent transfers of money between entities and among family members, including to children's accounts; and (3) the international ties of World Law Group and Bradley Haskins. *Id.* at 27-28. Based on this showing, the Court entered the TRO, which, among other things, ordered that Defendants' assets be frozen. ECF 12 § IV.

On August 28, 2015, the magistrate judge issued a Report and Recommendation that the TRO be converted to a preliminary injunction, and that the asset freeze remain in place, as to Orion, Bradley Haskins, World Law Debt Services, LLC, and World Law Processing LLC. ECF 26. The Court adopted the Report and Recommendation, without objection by any party, and entered the preliminary injunction on September 2, 2015. ECF 28. In its order, the Court explained that it was continuing the asset freeze because "there is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers . . . will occur from the transfer, dissipation, or concealment . . . of their assets or business records unless [Orion, Haskins, World Law Debt Services, LLC, and World Law Processing LLC] continue to be restrained and enjoined by Order of this Court." *Id.* ¶ 4. On September 9, 2015, the magistrate judge issued a Report and Recommendation that the TRO be converted to a preliminary injunction against Derin Scott, David Klein, Family Capital Investment & Management LLC, and Relief-Defendant Shannon Scott, and that the asset freeze remain in place as to those defendants. ECF 33. The Court adopted the Report and Recommendation, again without objection by any party, and entered the preliminary injunction on September 14, 2015. ECF 42. In its order, the Court explained that it was continuing the asset freeze over these additional defendants for the same reason as the first group of defendants, specifically that there was good cause to believe the defendants would divert assets. ECF 42 ¶ 4. The Court has since modified its order to exclude certain assets from the freeze[2] but it otherwise remains in effect today as to all defendants, including Orion.

[2] ECF 36 (joint motion requesting that the court modify the TRO/PI to permit individual defendants from opening new bank or credit card accounts); ECF 48 (joint motion to release certain accounts from the asset freeze). The Court has granted both motions. ECF 42; ECF 51. Another motion to modify brought by Derin Scott remains pending. ECF 54.

**E. The Counterclaim**

On September 25, 2015, the Derin Scott, David Klein, and Shannon Scott filed a Counterclaim against the Bureau. ECF 44. The Counterclaim alleges that the Bureau's decision to seek a freeze of Orion's assets while Orion was in a Chapter 11 bankruptcy proceeding was "void under the Bankruptcy laws," and challenges the Bureau's actions as "arbitrary and capricious" under the APA. Counterclaim ¶ 5. The Counterclaim further alleges that the Counterclaiming Defendants have ownership over Orion Processing. Counterclaim ¶ 2 (the Court's order "shut[] down [Counterclaiming Defendants'] business Orion Processing"); ¶ 6 (the Counterclaiming Defendants have suffered damages "resulting in at least the loss of their business"). The Counterclaiming Defendants also seek a declaration "regarding the respective rights of the parties and the bankruptcy trustee" and an order "declaring that [the Bureau's] actions were wrongful." Counterclaim ¶ 7, 8. Though the Counterclaim concerns the assets of Orion, Orion is not a party to the Counterclaim.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) requires this Court to dismiss an action when it lacks subject matter jurisdiction to grant the relief requested. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Friends of the Everglades v. EPA*, 699 F.3d 1280, 1289 (11th Cir. 2012) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is presumed that a cause [of action] lies outside . . . this limited jurisdiction." *Butler v. Morgan*, 562 Fed. App'x 832, 834 (11th Cir. 2014) (quoting *Kokkonen*, 511 U.S. at 377). Accordingly, to avoid dismissal under Rule 12(b)(1), the Counterclaiming Defendants bear the burden of proving that this Court has subject matter jurisdiction to hear the Counterclaim.

To survive a Rule 12(b)(6) challenge, a complaint "must state a plausible claim for relief—that is, it must contain sufficient factual matter, accepted as true, to state a claim for relief that is facially plausible." *FuQua v. Massey*, 615 Fed. App'x 611, 612 (11th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Counterclaim must be dismissed if, even accepting the factual allegations as true, the Counterclaim fails to allege a "plausible claim for relief." *Id.* (citing *Iqbal*, 556 U.S. at 678).

# ARGUMENT

The Administrative Procedure Act provides limited judicial review to certain persons aggrieved by "agency action," 5 U.S.C. § 702, but it "does not provide judicial review for everything done by an administrative agency," *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004) (quoting *Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948)). "The prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with . . . congressional directives is not contemplated by the APA." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 66 (2004) ("*SUWA*"). As discussed below, the Counterclaiming Defendants' challenge to the Bureau's decision to bring an enforcement action and seek equitable relief far exceeds the limitations of APA review, and should be dismissed for lack of jurisdiction and on the merits.

## I. THE COURT LACKS JURISDICTION OVER THE COUNTERCLAIM

### A. The Counterclaim Challenges Actions "Committed to Agency Discretion by Law"

The Administrative Procedure Act expressly does not apply to decisions "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). An agency action is committed to agency discretion by law "wherever the statute under which the agency acts 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion'—that is, where a court would have 'no law to apply.'" *Conservancy of S.W. Fla. v. U.S. Fish & Wildlife Service*, 677 F.3d 1073, 1078 (11th Cir. 2012) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "Choosing whether and how to enforce a statute is the quintessential type of action committed to an agency's absolute discretion" and "[s]uch decisions are presumptively unreviewable." *Better Markets, Inc. v.* DOJ, 83 F. Supp. 3d 250, 256 (D.D.C. 2015); *see Chaney*, 470 U.S. at 831 (agency decisions not to enforce a statute are unsuitable for judicial review). Agencies "have this latitude because they are designated by statute as the President's delegate to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting U.S. Const., art. II, § 3).

Under the CFPA, if "any person violates a Federal consumer financial law, the Bureau *may* . . . commence a civil action against such person." 12 U.S.C. § 5564(a) (emphasis added). The use of the term "may" grants the Bureau with discretion,

*DIRECTV, Inc. v. Brown,* 371 F.3d 814, 817 (11th Cir.2004), and provides no guidance as to what factors the Bureau must consider in exercising that discretion, *see Chaney*, 470 U.S. at 830. Indeed, even the Counterclaim concedes that the Bureau "is empowered to decide to bring and continue litigation under 12 U.S.C. § 5564 to enforce Federal consumer financial laws." Counterclaim ¶ 1. Courts have found that similar broad and permissive statutory language affords federal agencies with prosecutorial discretion that is not reviewable under the APA. *See Chaney*, 470 U.S. at 831 (Food, Drug, and Cosmetic Act conferred prosecutorial discretion on Secretary because it authorized Secretary to "conduct investigations" without any standards to apply); *Young America's Found. v. Gates*, 560 F. Supp. 2d 39, 44 (D.D.C. 2008) (statute conferred authority on Secretary of Defense to "determine" whether an institution has an infringing policy or practice, without providing standards for such determination).

Here, the Bureau's decision to bring this enforcement action falls squarely within the Bureau's prosecutorial discretion. The CFPA's definition of "person" extends both to the Counterclaiming Defendants, *see* 12 U.S.C. § 5481(19) (defining "person" as "an individual"), and the remaining Defendants, *see id*. (defining "person" as a "partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity"). As set forth more fully in the Complaint, the Bureau has determined that the Defendants have violated Federal consumer financial law by violating the CFPA and the TSR. Compl. ¶¶ 7, 74-91; *see also* 12 U.S.C. § 5481(14); 15 U.S.C. §§ 6102(c)(2), 6105(d). Accordingly, the Bureau's decision to "commence a civil action" and seek equitable relief against Defendants is within the Bureau's prosecutorial discretion and the Court lacks subject matter jurisdiction to review that decision. *Lenis v. Attorney General*, 525 F.3d 1291, 1294 (11th Cir. 2008) (stating that the court "lack[ed] jurisdiction to review" agency action "committed to agency discretion by law"); *see* 5 U.S.C. § 701(a)(2) (judicial review unavailable for agency action "committed to agency discretion by law").

### B. The Counterclaim Does Not Identify "Agency Action" As Defined in the APA

Even if the Bureau's decision to bring this action was not "committed to agency discretion," the APA permits review only of "agency action," 5 U.S.C. §§ 702, 704, which is

narrowly and specifically defined as a subset of agency activities, 5 U.S.C. § 551(13). Under the APA, "agency action" means "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id*. §§ 701(b)(2), 551(13). The terms "rule," "order," "license," "sanction," and "relief" are also defined by the statute. *See* 5 U.S.C. §§ 551(4), (6), (8), (10), (11).

The enforcement decisions challenged here differ fundamentally from the types of "agency action" subject to APA review. "[T]he filing of a civil action does not fit within the APA's definition of agency action: it is not a rule, order, license, sanction, form of relief, or failure to act." *City of Oakland v. Holder*, 901 F. Supp. 2d 1188, 1195 (N.D. Cal. 2013); *see Tucker v. United States*, No. 2:12-cv-409, 2013 WL 4498897, at *5 (D. Utah Aug. 19, 2013) ("Litigation decisions are not agency decisions that can be reviewed under the APA."). Moreover, to the extent that the Counterclaim challenges this Court's entry of an asset freeze, as opposed to the Bureau's decision to seek the asset freeze, the Counterclaim similarly fails to challenge "agency action." *See* 5 U.S.C. § 701(b) (defining "agency" as "each authority of the Government of the United States . . . but does not include . . . the courts of the United States"). Accordingly, because the Counterclaim does not challenge "agency action" as defined by the APA, it requires dismissal.

### C. The Counterclaim Does Not Identify "Final Agency Action" For Which There Is "No Adequate Remedy in Court"

Furthermore, even if the Counterclaiming Defendants had challenged an "agency action" that was *not* "committed to agency discretion," their claim would still fail because it does not challenge "final agency action for which there is no adequate remedy in court." 5 U.S.C. § 704. The APA only provides for judicial review of (1) "agency action made reviewable by statute" and (2) "final agency action for which there is no adequate remedy in a court." 5 U.S.C. § 704. Because no other statute provides for judicial review of the Bureau's enforcement decisions, APA review could only be available in this case on the basis that the Counterclaim challenges "final agency action" for which there is "no adequate remedy in court." Furthermore, because this requirement "implicates federal subject matter jurisdiction," *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1240 (11th Cir. 2003), the Court lacks jurisdiction to review the Counterclaim if it fails to identify "final agency action," *id*. As discussed below, the Counterclaim fails to pass these thresholds.

In order for agency action to be "final" and subject to APA review, "the action must mark the consummation of the agency's decisionmaking process[;] it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Nat'l Parks Conservation Ass'n*, 324 F.3d at 1236 (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted)).

Neither the Bureau's commencement of an enforcement proceeding nor its decision to seek an asset freeze determines "rights and obligations" or causes legal consequences to flow. Rather, "those determinations . . . will flow from the Court's . . . decisions, not a decision by the [Bureau]." *City of Oakland*, 901 F. Supp. 2d at 1195 (holding that DOJ's filing of a civil forfeiture complaint does not meet the criteria for "finality" because "filing the complaint did not determine any rights or obligations and has not resulted in any legal consequences"); *accord NAACP v. Meese*, 615 F. Supp. 200, 203 (D.D.C. 1985) (holding that the Attorney General's acts in commencing litigation "alone cannot and will not deny rights or create legal obligations or relationships" because "[o]nly the courts to which the Attorney General's motions are addressed have the power to take any of these steps, and it is these courts, not the Attorney General, which take final action"). Indeed, as the Supreme Court has recognized, an agency's decision to bring an action is preliminary in nature, a determination that "further inquiry is warranted." *FTC v. Standard Oil of Cal.*, 449 U.S. 232, 241 (1980). "Initiating an enforcement proceeding against a company . . . may have a devastating impact on the company's business, but that does not make the agency's action final." *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 645 (6th Cir. 2004). Regardless of whether "the burden of responding to [an enforcement proceeding] is substantial, it is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." *Standard Oil*, 449 U.S. at 242.

Moreover, the Counterclaiming Defendants have an "adequate remedy in a court" before *this* Court. If the Counterclaiming Defendants now believe—after failing to challenge the entry of the preliminary injunction initially—that this Court's order is somehow contrary to the Bankruptcy Code, they may simply ask the Court to modify its order. Indeed, they have already done so. *See* Notice of Revised Prop. Prelim. Injunction, ECF No. 36; Joint Mot. to Release Certain Accts. from Asset Freeze, ECF No. 48; Mot. to

Modify Prelim. Injunction, ECF No. 54. The Court has granted the earlier joint motions and the most recent motion, which was filed several days ago, remains pending. *See* ECF 42, 51. The APA does not provide a separate remedy because no remedy is needed.

Furthermore, the relief sought by the Counterclaiming Defendants demonstrates the inapplicability of APA review. The Counterclaim seeks "an order declaring that [the Bureau's] actions were wrongful." Counterclaim ¶ 8. But, as relevant here, the APA provides only that a reviewing court "shall . . . set aside agency action . . . found to be . . . arbitrary [or] capricious." 5 U.S.C. § 706(2)(A). If the Court were to agree and "set aside" or "declare void" the Bureau's *motion* for a TRO or preliminary injunction, it would not have the effect of modifying the Court's *order* granting the asset freeze. Likewise, to the extent that the Counterclaiming Defendants allege that they have been harmed by the "loss of their business" Orion, Counterclaim ¶ 6, vacating the Bureau's motion would not remedy that alleged harm because Orion is being liquidated by the bankruptcy court. In other words, a decision from this Court setting aside the Bureau's motion for a TRO would not have any effect on the bankruptcy proceeding or otherwise "restore" Orion to the Counterclaiming Defendants. Accordingly, APA review is inappropriate here.

**D. The Counterclaiming Defendants Lack Standing**

Even if APA review were otherwise appropriate in this case, the Counterclaiming Defendants fail to establish that they have standing to bring an APA claim. To survive a motion to dismiss, the Counterclaim must first satisfy Article III's standing requirements. *Match-E-Be-Nash-She-Wish Band of Pottawamtomi Indians v. Patchak*, 132 S.Ct. 2199, 2211 (2012). Here, the Counterclaiming Defendants lack Article III standing because they have not been "injured." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Counterclaiming Defendants allege that they have been harmed by the "seizure" of Orion's assets, Counterclaim ¶ 2, but Orion's assets have merely been frozen, not seized, with the goal of preserving assets to provide consumer redress at the resolution of this case, ECF 28, ¶ 4. Moreover, there is no "favorable decision" that would "redress" the harm the Counterclaiming Defendants claim to have suffered in this case. *See Lujan*, 504 U.S. at 560-61. As discussed above, although the Counterclaiming Defendants claim to have "los[t] . . . their business," Counterclaim ¶ 6, the relief they seek would not "restore" Orion to them

because Orion is being liquidated by the bankruptcy court. In other words, Orion does not exist as it did before, and no order from this Court could change that.

Even if the Counterclaiming Defendants satisfied the requirements of Article III standing, they lack standing under the APA to bring their claim. The APA grants standing to a person "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702; *see R.T. Vanderbilt Co. v. Occupational Safety and Health Review Comm'n*, 708 F.2d 570, 577-78 (11th Cir. 1983). But the Counterclaiming Defendants fail to cite a "relevant statute" or any "statutory provision whose violation forms the legal basis" for their claim. *See Movimiento Democracia, Inc. v. Chertoff*, 417 F. Supp. 2d 1350, 1354 (S.D. Fla. 2006). The Counterclaim attempts to invoke the bankruptcy code's automatic stay provision, 11 U.S.C. § 362, but that provision protects, at most, the debtor and creditors of an estate. *In re Lickman*, 297 B.R. 162, 188 (M.D. Fla. 2003) (citing *Martino v. First Nat'l Bank of Harvey*, 186 B.R. 414, 435 (N.D. Ill. 1995)). The Counterclaim cites no statute that provides relief to the Counterclaiming Defendants as "owners" of Orion.

Because the Counterclaiming Defendants bear the burden of pleading that they have standing, and have failed to do so, the Counterclaim should be dismissed. *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990) (citing *Steele v. Nat'l Firearms Act Branch*, 755 F.2d 1410, 1413 (11th Cir. 1985)).

## II. THE COUNTERCLAIM ALSO FAILS ON THE MERITS BECAUSE THE BUREAU'S ACTIONS WERE NOT "ARBITRARY AND CAPRICIOUS"

Even if this Court were to reach the merits of the Counterclaim, the Counterclaiming Defendants cannot show that the Bureau's decision to bring this enforcement action and move for temporary injunctive relief was arbitrary and capricious within the meaning of the APA. That is because the challenged action here falls squarely within the "police and regulatory exemption" to the automatic stay. Section 362(b)(4) of the Bankruptcy Code provides that:

> The filing of a petition [for bankruptcy] *does not operate as a stay* . . . of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power.

11 U.S.C. § 362(b)(4) (emphasis added). The purpose of the police or regulatory power exception is to permit the government to protect the public health, safety, and welfare of its

citizenry, and prevent wrongdoers from hiding behind Bankruptcy Code protections. *See In re Commonwealth Cos.*, 913 F.2d 518, 521-22 (8th Cir. 1990); *CFTC v. Co Petro Mktg. Grp., Inc.*, 700 F.2d 1279, 1283 (9th Cir. 1983). The legislative history of the Bankruptcy Code explains that "where a governmental unit is suing a debtor to prevent or stop violation of fraud . . . *consumer protection* . . . or similar police or regulatory laws, or attempting to fix damages for a violation of such a law, the action or proceeding is not [automatically stayed]." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Protection*, 474 U.S. 494, 504 (1986) (quoting H.R. Rep. No. 95-595, at 343 (1977); S. Rep. No. 95-989, at 52 (1978)) (emphasis added).

Courts uniformly uphold the "police and regulatory exemption" in actions where the federal government seeks to enforce a statutory prohibition on conduct. *See, e.g.*, *Brock v. Rusco Indus., Inc.*, 842 F.2d 270, 273 (11th Cir. 1988) (reversing district court and holding that the automatic stay did not bar the continuation or enforcement of an action under the Fair Labor Standards Act); *NLRB v. Evans Plumbing Co.*, 639 F.2d 291, 293 (5th Cir. 1981) (automatic stay did not bar NLRB proceedings to reinstate with back pay two employees who were wrongly discharged). For example, Courts have repeatedly held that FTC enforcement actions seeking injunctive relief for violations of the FTC Act are covered by this exception and may proceed notwithstanding the filing of a bankruptcy petition. *See, e.g.*, *FTC v. Consumer Health Benefits Ass'n*, 10-cv-3551, 2011 WL 2341097, at *1-4 (E.D.N.Y. Jun. 8, 2011); *FTC v. Holiday Enterprises, Inc.*, No. 1:06-cv-2939, 2008 WL 953358, at *12 (N.D. Ga. Feb. 5, 2008); *FTC v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451, 459 (D. Md. 2004).

This enforcement proceeding is similarly not stayed by Orion's bankruptcy. The Bureau brought this action to protect consumers from Defendants' unlawful debt-relief scheme and, as such, is acting within the police power granted to the Bureau in the CFPA. *See* Pub. L. No. 111-23, 124 Stat. 1376, 1376 (2010) (the CFPA was enacted to, among other things, "protect consumers from abusive financial services practices"). As a result, any bankruptcy filing by Orion is "irrelevant to the instant litigation." *Holiday Enterprises, Inc.*, No. 1:06-cv-2939, 2008 WL 953358, at *12.

The Counterclaiming Defendants may argue that the police and regulatory exemption does not apply because the Bureau "seize[d] property of the bankruptcy estate," Counterclaim ¶ 3, by obtaining an asset freeze. But the asset freeze is appropriate equitable

relief in this case, where the Bureau seeks to preserve the possibility of restitution for consumers harmed by World Law's illicit scheme. *See* 12 U.S.C. § 5564(a); § 5565(a)(1); Fed. R. Civ. P. 65(b); *In re Commonwealth Cos.*, 913 F.2d at 522 (the exemption "permit[s] an injunction and enforcement of an injunction"); *see also CFTC v. Offshore Fin. Consultants of Fla., Inc.*, 02-cv-60769, 2002 WL 1788031, at *1 (S.D. Fla. Jun. 5, 2002). Furthermore, an asset freeze is not a seizure; it "merely protects and preserves . . . assets from further transfer or dissipation by . . . defendants." *SEC v. Wolfson*, 309 B.R. 612, 621 (D. Utah 2004) (quoting *FTC v. R.A. Walker & Assocs., Inc.*, 37 B.R. 608, 611 (D.D.C. 1983)). The exemption applies because the Bureau is acting not in its own "pecuniary interest" to enforce a money judgment owed to the Bureau, but is instead seeking to "effectuate public policy" by protecting consumers from World Law's debt-relief scheme. *In re Selma Apparel Corp.*, 132 B.R. 969 (S.D. Ala. 1991); *see Ohio v. Kovacs*, 469 U.S. 274 (1985). By bringing the enforcement action, the Bureau seeks to preserve the status quo and increase the likelihood that funds will be available to provide restitution to consumers harmed by defendants' debt-relief scheme. Accordingly, the asset freeze is appropriate.

Nor is it relevant that the Bureau had notice of Orion's pending bankruptcy proceeding when it sought an asset freeze. Orion's bankruptcy does "does not operate as a stay . . . of the *commencement* or continuation" of the Bureau's enforcement authority. 11 U.S.C. § 362(b)(4) (emphasis added); *see also SEC v. Wyly*, No. 10-cv-5760, 2014 WL 5569363, at *2-3 (S.D.N.Y. Nov. 3, 2014) (imposing asset freeze after filing of bankruptcy petition); *SEC v. Morriss*, No. 4:12-cv-80, 2012 WL 2154903 (E.D. Mo. June 13, 2012) (same); *SEC v. Reynolds*, No. 3:08-cv-438, 2011 WL 903395 (N.D. Tex. Mar. 16, 2011) (asset freeze entered before filing of bankruptcy petition); *SEC v. Wolfson*, 309 B.R. 612, 621 (D. Utah 2004) (maintaining asset freeze and receivership after filing of bankruptcy petition). Accordingly, the Bureau's decision to seek an asset freeze against an entity that was in bankruptcy was entirely proper. Likewise, nothing in § 362(b)(4) required the Bureau to "attend [Orion's] hearing or to request relief," Counterclaim ¶ 4, from the bankruptcy court before bringing this enforcement action.

Accordingly, even if the Court were to reach the merits, the Counterclaim should still be dismissed because the Bureau's enforcement action falls within the police and regulatory exemption to the automatic stay and was not "arbitrary and capricious."

# CONCLUSION

For the foregoing reasons, the Court should dismiss the Counterclaim.

Dated: November 24, 2015

Respectfully submitted,

/s/ Jessica Rank Divine________

CARA PETERSEN
Deputy Enforcement Director for Litigation

JAMES T. SUGARMAN
Assistant Litigation Deputy for Litigation

LAURA SCHNEIDER, NY Bar # 2715449
S.D. Fla. Bar # 77828
(202) 435-7311
laura.schneider@cfpb.gov

WHITNEY CASE, DC Bar # 501296
S.D. Fla. Special Bar # A5502103
(202) 435-7371
whitney.case@cfpb.gov

MEREDITH FUCHS
General Counsel

TO-QUYEN TRUONG
Deputy General Counsel

JOHN R. COLEMAN
Assistant General Counsel

JESSICA RANK DIVINE
NY Bar # 4544573
S.D. Fla. Special Bar # A5502145
(202) 435-7863
jessica.divine@cfpb.gov

1700 G Street, NW
Washington, DC 20052

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2015, I filed the foregoing document (Plaintiff's Motion to Dismiss the Counterclaim) with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel who have identified themselves to Plaintiff or who have entered an appearance in this matter, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

For Defendants David Klein, Derin Scott, and Relief Defendant Shannon Scott:

Jeffrey Cohen
Fox Rothschild, LLP
1225 17th Street, Suite 2200
Denver CO 80202
(303) 292-1200
jcohen@foxrothschild.com

Joseph A. DeMaria
Fox Rothschild, LLP
2 S. Biscayne Blvd., Suite 2750
Miami, FL 33131
(305) 442-6547
jdemaria@foxrothschild.com

David A. Greene, Esq.
Fox Rothschild LLP, 222
Lakeview Avenue, Suite 700
West Palm Beach Florida 33401
(561) 804-4441
dgreene@foxrothschild.com

Eric A. Bevan, Esq.
Fox Rothschild LLP,
Esperante Building, 222 Lakeview
Avenue, Suite 700
West Palm Beach Florida 33401
(561) 835-9600
ebevan@foxrothschild.com

For Receiver Robb Evans & Associates LLC

Gary Owen Caris
Dentons US LLP
300 South Grand Avenue, 14th Floor
Los Angeles, CA90071
(213) 688-1000
Gary.caris@dentons.com

Lesley Anne Hawes
Dentons US LLP
300 South Grand Avenue, 14th Floor
Los Angeles, CA90071
Lesley.hawes@dentons.com

Monica L. Irel
Dentons US LLP
10700 N. Kendall Drive, Suite 303
Miami, FL 33176-1469
(305) 670-4843
Monica.irel@dentons.com

Via United Parcel Service (UPS) and electronic mail:

For US Trustee for Orion Processing, LLC
Steve Turner
Managing Partner - Bankruptcy
Barrett Daffin Frappier Turner & Engel, LLP
610 West 5th Street, Suite 602
Austin, Texas 78701
Phone: (512) 687-2501
SteveT@bdfgroup.com

Mark Taylor
Taube Summers Harrison Taylor Meinzer Brown LLP
100 Congress Avenue, 18th Floor
Austin, TX 78701
mtaylor@taubesummers.com

Respectfully submitted,

/s/ Jessica Rank Divine

JESSICA RANK DIVINE
NY Bar # 4544573
S.D. Fla. Special Bar # A5502145
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-7863 (telephone)
jessica.divine@cfpb.gov
*Attorney for Plaintiff*
*Consumer Financial Protection Bureau*