**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

Case No. 15-23070-Civ-COOKE/TORRES

Referred to Magistrate Judge Edwin G. Torres,
Order of Reference dated August 18, 2015 [ECF No. 10]

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff/Counter-Defendant,

v.

ORION PROCESSING, LLC, a Texas limited liability company d/b/a World Law Processing, Wld Credit Repair, and World Law Debt; FAMILY CAPITAL INVESTMENT & MANAGEMENT LLC, a Delaware limited liability company a/k/a FCIAM Property Management, WORLD LAW DEBT SERVICES, LLC, a Delaware limited liability company; DERIN SCOTT, an individual; DAVID KLEIN, an individual; and BRADLEY JAMES HASKINS, individually and d/b/a World Law Group, LLP, World Law Group America, LLP, WLD Price Global, Inc., World Law Forms And Mediation, and World Law South,

Defendants/Counter-Plaintiffs,

SHANNON SCOTT, an individual,

Relief Defendant/Counter-Plaintiff.

_______________________________________/

**DEFENDANTS'/COUNTER-PLAINTIFFS' RESPONSE IN OPPOSITION TO PLAINTIFF'S/COUNTER-DEFENDANT'S**
**MOTION TO DISMISS COUNTERCLAIM**

Defendants/Counter-Plaintiffs, Derin Scott and David Klein, and Relief Defendant/ Counter-Plaintiff, Shannon Scott (collectively referred to hereafter as "Counter-Plaintiffs"),

by and through their undersigned counsel and pursuant to S.D. Fla. L.R. 7.1, respond in opposition to the Motion to Dismiss Counterclaim [ECF No. 56] filed by the Plaintiff/Counter-Defendant, Consumer Financial Protection Bureau ("CFPB"), as follows:

## I. INTRODUCTION

CFPB's Motion to Dismiss Counterclaim (the "Motion to Dismiss") should be denied for four reasons. First, the Motion to Dismiss incorrectly argues that the Counterclaim should be dismissed because Counter-Plaintiffs cannot succeed on the merits of their claim. This is not, however, the standard for a motion to dismiss. Counter-Plaintiffs need only to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Counter-Plaintiffs have alleged facts that, if assumed to be true and taken in the light most favorable to Counter-Plaintiffs (as they must be), would constitute unlawful, arbitrary and capricious conduct by the CFPB.

Second, CFPB mischaracterizes the fundamental nature of Counter-Plaintiffs' claim. CFPB contends that Counter-Plaintiffs' claim is merely that CFPB acted unlawfully by freezing Counter-Plaintiffs' assets. This is false. Counter-Plaintiffs' claim is that CFPB acted unlawfully by *physically seizing* Counter-Plaintiffs' property that was subject to the bankruptcy stay. Under federal jurisprudence, even if the government may impose an asset freeze over property subject to a bankruptcy stay, it is still prohibited from exerting *physical control* over those assets.

Third, CFPB's arguments that this Court lacks subject matter jurisdiction fail because the CFPB did not show clear and convincing evidence that Congress intended to foreclose judicial review under the Administrative Procedure Act ("APA") of the agency's purported

enforcement actions pursuant to the Consumer Financial Protection Act ("CFPA"). Further, even if judicial review under the APA were unavailable, this Court would still have subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1334(b) to consider the Counterclaim.

Finally, CFPB's standing arguments also miss the mark. Counter-Plaintiffs pled facts that the CFPB violated their property rights, which caused them to suffer palpable economic harm. This is sufficient to establish Article III standing under settled Supreme Court jurisprudence. Moreover, CFPB's attempt to challenge the "redressability" element of standing fails because it mischaracterizes the type of relief Counter-Plaintiffs seek. When properly read, the Counterclaim meets all the required factors to comfortably establish Counter-Plaintiffs' Article III standing.

For the foregoing reasons, as discussed more fully below, the Motion to Dismiss should be denied.

## II. ARGUMENT

### A. Counter-Plaintiffs' claim against CFPB is supported by sufficient allegations that CFPB improperly seized Counter-Plaintiffs' property, and the evidentiary merits of this issue need not be addressed on a motion to dismiss.

#### 1. The Counterclaim need merely state a plausible claim—it is not required to demonstrate "success on the merits."

CFPB overstates the standard necessary for the Counterclaim to survive CFPB's Motion to Dismiss. Counter-Plaintiffs do not need to demonstrate, at this point in the proceedings, that they can *prove* the merits of the case, i.e., that CFPB's conduct was unlawful, arbitrary and capricious, and thus in violation of the automatic stay under Title 11 and in violation of the APA. See, Motion to Dismiss [ECF No. 56], at p 12. Success on the

merits is not even remotely the standard for deciding whether a claim has been adequately pled.

In actuality, a claimant need only plead "a short and plain statement of the claim that fairly notifies the defendant of both the claims and the supporting grounds." *Osorio v. State Farm Bank, F.S.B.*, 857 F.Supp.2d 1312, 1314 (S.D. Fla. 2012) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The standard relevant here is that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint "does not need detailed factual allegations," but does need to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Further, "When reviewing a motion to dismiss, a court must limit its consideration to the pleadings and exhibits attached to the pleadings and, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff." *BAC Fin. Servs., Inc. v. Multinational Life Ins. Co.*, No. 13-21529, 2013 WL 5929428, at *2 (S.D. Fla. Nov. 5, 2013) (citations omitted); *see also Chaparro v. Carnival Corporation*, 693 F.3d 1333, 1337 (11th Cir. 2012) (complaint's allegations must be accepted as true and viewed in light most favorable to claimant). A court cannot consider matters outside of the pleadings. *Osorio*, 857 F.Supp.2d at 1314. "[A]

court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations, that, if true, would push the claim 'across the line from conceivable to plausible.'" *Id.* (citing *Iqbal,* 556 U.S. at 680). A motion to dismiss should also be denied where the "facts alleged in the complaint are plausible and raise a reasonable expectation that discovery could supply additional proof of ... liability." *Chapparo*, 693 F.3d at 1337.

The relevant question is thus whether Counter-Plaintiffs have stated a plausible claim, based on the allegations asserted by Counter-Plaintiffs in the Counterclaim, which are to be taken as true and construed in the light most favorable to Counter-Plaintiffs. The Court need not consider at this stage, for example, the several pages of additional—and disputed—facts alleged by CFPB in its Motion to Dismiss. Motion to Dismiss [ECF No. 56] at pp. 2-6. CFPB's Motion to Dismiss raises issues that are properly addressed in an evidentiary proceeding before a trier of fact, i.e., at summary judgment or trial, not by way of a Rule 12(b)(6) Motion to Dismiss.

**2. Counter-Plaintiffs have pled sufficient facts to satisfy Rule 8 by alleging that CFPB violated the bankruptcy stay by seizing Counter-Plaintiffs property.**

In its opposition, CFPB fundamentally misstates the allegations and nature of Counter-Plaintiff's claim. CFPB contends that the Counterclaim asserts merely that CFPB violated the bankruptcy stay "by obtaining an assert freeze." Motion to Dismiss [ECF No. 56] at p. 13. This is not correct. The issue is not that CFPB sought and obtained an asset freeze; the issue is that CFPB—*actually*, *physically*, *and forcibly*—seized Counter-Plaintiffs' property. Counter-Plaintiffs alleged, specifically, that "On or about August 20, 2015, [CFPB] *seized all of Counter-Plaintiffs' property and shut down Orion* while [CFPB knew that the Orion bankruptcy was already underway]." Counterclaim [ECF No. 44] at ¶ 4. Counter-

Plaintiffs further allege that, "Wrongfully, [CFPB] has continued to maintain possession of property that is properly under the Bankruptcy Court's jurisdiction." Counterclaim [ECF No. 44] at ¶ 5. In fact, CFPB raided Orion Processing's facilities—and then *physically carried away* property of Counter-Plaintiffs and Orion Processing. This property is still in CFPB's control and has not been returned.

The gravamen of Counter-Plaintiffs' claim is that this physical seizure of property is a violation of the automatic stay and the APA. Federal courts have held that an asset freeze accompanied by an exertion of physical control over a defendant's property is unlawful when there a bankruptcy stay is in place. *See, e.g.*, *SEC v. Brennan*, 230 F.3d 65, 73 (2nd Cir. 2000) (effort by SEC to enforce the repatriation of assets from overseas violated a bankruptcy stay); *cf. SEC v. Wyly*, 73 F. Supp. 3d 315, 321 (S.D.N.Y. 2014) (contrasting *Brennan* and finding dispositive that "the SEC is not seeking control over any asset").

The authority cited by CFPB in its brief focuses merely on whether the government has the authority to implement an asset freeze. At no point does CFPB address the issue of whether Counter-Plaintiffs have stated a valid claim based on the actual, physical *seizure* of their property in violation of the bankruptcy stay. As much as CFPB wants to address the merits of Counter-Plaintiffs' claim, Counter-Plaintiffs want the same thing—but the merits of the claim are not properly adjudicated on a motion to dismiss.

The Motion to Dismiss should be denied, or Counter-Plaintiffs should, at the least, be afforded the opportunity to amend their claim to assert additional relevant facts. "Generally, '[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'" *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

**B. <u>The CFPB failed to carry its heavy burden of proving by clear and convincing evidence that Congress intended to cut off judicial review of its actions.</u>**

CFPB first argues that this Court lacks subject matter jurisdiction to review the Counterclaim under the APA because its actions and decisions forming the basis of the Counterclaim were "committed to [its] discretion by law." Motion to Dismiss (ECF No. 56] at p. 7 (citing 5 U.S.C. § 701(a)(2)). CFPB fails to appreciate, however, that there is a "strong presumption" in favor of judicial review of agency action by the courts, which will not give way "unless there is persuasive reason to believe that such was the purpose of Congress." *Temple Univ.-of Com. Sys. of Higher Ed. v. Associated Hosp. Serv. of Philadelphia*, 361 F. Supp. 263, 268 (E.D. Pa. 1973) (citing *Abbott Laboratories v. Gardener*, 387 U.S. 136, 140, 87 S. Ct. 1507, 1511 (1967)). The CFPB, as the party attempting to invoke the exception to judicial review, bears a "heavy burden" of proving, by clear and convincing evidence, a legislative intent that the courts should restrict access to judicial review. *Barlow v. Collins,* 397 U.S. 159, 166, 90 S.Ct. 832, 838 (1970) (citation omitted); *First Nat. Bank of Milaca v. Smith*, 445 F. Supp. 1117, 1120 (D. Minn. 1977) (citing *Dunlop v. Bacjowski*, 421 U.S. 560, 95 S.Ct. 1851 (1975)); *Temple Univ.-of Com. Sys. of Higher Ed.*, 361 F. Supp. at 268 (finding that the "generous review provisions" of the APA must be given a "hospitable" interpretation, and only upon clear and convincing evidence of a contrary legislative intent should courts restrict access to judicial review). Given the foregoing, the § 701(a)(2) exception to judicial review "has been characterized by the Supreme Court as a 'very narrow' one." *Associated Elec. Co-op., Inc. v. Morton*, 507 F.2d 1167, 1176 (D.C. Cir. 1974) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820 (1971)); *Greenwood Utilities Comm'n v. Hodel*, 764 F.2d 1459, 1464 (11th Cir. 1985) ("Judicial review … is the rule and

nonreviewability is a narrow exception which must be clearly demonstrated.") (citation omitted).

Here, CFPB has fallen far short of meeting its heavy burden to show clear and convincing evidence that Congress intended to foreclose judicial review. It merely quotes Congress's use of the word "may" in 12 U.S.C. § 5564(a) regarding its authority to commence a civil action under the CFPA and then states, in conclusory fashion, that Congress provided no guidance as to what factors the CFPB must consider in exercising that discretion. Motion to Dismiss [ECF No. 56] at pp. 8-9. CFPB's position, that Congress granted it unfettered discretion in bringing civil actions under the CFPA, is belied by the plain language of the statute. The obvious limiting factors and "guidance" Congress provided is found in 12 U.S.C. § 5564(a), which states, "*If any person violates a Federal consumer financial law*, the Bureau may, *subject to sections 5514, 5515, and 5516 of this title*, commence a civil action against such person …." *Id.* (emphasis added). Whether a federal consumer financial law has been violated, whether the agency acted within the confines of its statutory authority under the CFPA, and whether the agency violated certain federal bankruptcy protections are precisely the kinds of questions federal courts such as this one are routinely called upon, and are certainly qualified, to resolve. *First Nat. Bank of Milaca v. Smith*, 445 F.Supp. 1117, 1120 (D. Minn. 1977) ("The basic guideline for determining whether a given action is committed to agency discretion by law is the practical one[:] … are the questions presented of the type which courts are normally qualified to resolve?"); 28 U.S.C. § 1334(b) (" … the district courts shall have original but not exclusive jurisdiction of all civil proceedings under title 11, or arising in or related to cases under title 11.").

Not only does the CFPB ignore the limits and guidance Congress expressly supplied in the statute, but it is also telling that the CFPB fails to cite to anything in the CFPA's legislative history that would indicate congressional intent to cut off judicial review. Accordingly, the CFPB has not met its heavy burden of overcoming the strong presumption of reviewability under the APA.

The CFPB also fails to cite a single case where a federal court held that Congress intended to cut off judicial review of the CFPB's actions under the CFPA. Moreover, the cases cited by the CFPB offer no support whatsoever for its position. In *Heckler v. Chaney*, the Supreme Court held that the Food and Drug Administration's (FDA) *refusal* to take certain discretionary actions fell within the § 702(a) exception and was unreviewable. 470 U.S. 821, 831, 105 S.Ct. 1649, 1655 (1985). In reaching its conclusion, the Court distinguished that "when an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts are often called upon to protect." *Id.* at 832, 105 S.Ct. at 1656 (emphasis in original). By stark contrast, this Court is presented with the opposite factual situation: where an agency exercised its coercive powers over individuals' property rights by seizing the property by force. On these facts, *Heckler* actually requires a finding of reviewability. 470 U.S. at 832, 105 S.Ct. at 1656 ("[W]hen an agency *does* act to enforce, that action itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner. The action at least can be reviewed to determine whether the agency exceeded its statutory powers.") (emphasis in original) (citation omitted).

The CFPB also cites *Young America's Found. v. Gates*, 560 F.Supp.2d 39, 44 (D.D.C. 2008) to support its request for a finding of nonreviewability. Motion to Dismiss [ECF No.

56], p. 8. But, as in *Heckler*, the *Gates* case also involved a situation where the plaintiff complained of the agency's decision to *not* act. *Id.* at 40-42 (noting that plaintiff sought to compel the Department of Defense to cut off federal funding to a university which the plaintiff believed was denying equal access to military recruiters in violation of federal law). The *Gates* court relied upon and discussed *Heckler* at length for the proposition that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Id.* at 43 (quoting *Heckler*, 470 U.S. at 831, 105 S.Ct. at 1649). The plaintiff in *Gates* failed to overcome the presumption of nonreviewability of an agency's decision to not enforce, and the court consequently held that the action was barred by § 701(a)(2). *Id.* at 47. This presumption, however, like the *Heckler* and *Gates* decisions, simply does not apply here.

For the foregoing reasons, the very narrow exception to reviewability under 5 U.S.C. § 701(a)(2) is inapplicable. CFPB has failed to overcome the strong presumption of judicial review and its reliance upon *Heckler* and *Gates* is misplaced.

### C. Judicial Review of the CFPB's actions is still available even if it is not specifically authorized under the APA.

CFPB's next two arguments are that the Counterclaim must be dismissed because it does not challenge "agency action," and even if it did, there is an adequate remedy in court. Motion to Dismiss [ECF No. 56] at pp. 8-11. Consequently, CFPB argues that judicial review is not available under the APA. *Id.* Both arguments are fatally flawed because they rest on the incorrect premise that there can be no judicial review whatsoever unless CFPB's actions fall within specific definitions under the APA. On the contrary, "[t]he default rule is that agency actions are reviewable under federal question jurisdiction, pursuant to 28 U.S.C.

17049 § 1331 and *reinforced* by the [APA], *even if no statute specifically authorizes judicial review*." *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004) (citing *Reno v. Catholic Soc. Serv., Inc.*, 509 U.S. 43, 56-57, 113 S.Ct. 2485 (1993)) (emphasis added). Therefore, even if the APA did not specifically and independently authorize judicial review, this Court would not lack subject matter jurisdiction pursuant to the default rule and federal question jurisdiction, 28 U.S.C. § 1331. In other words, the APA serves to *reinforce* the federal question statute; it does not supplant it as CFPB's argument implies.

The facts of the *City of Oakland v. Holder* case, cited by CFPB in support of both arguments, are instructive. 901 F.Supp.2d 1188 (N.D. Cal. 2013). In *Holder*, the court determined that the plaintiff was required to demonstrate that the agency action it challenged qualified as a "final agency action" under the APA. *Id.* at 1192-93. Critically, however, the only reason given for this requirement was that the plaintiff's complaint did not identify a statutory basis that provided for judicial review independent of the APA. *Id.* at 1192. By contrast, Defendants' Counterclaim here repeatedly identifies multiple provisions of the U.S. Bankruptcy Code as the primary basis for the Counterclaim. Counterclaim [ECF No. 44] at ¶¶ 2, 3, 7. The Counterclaim's only reference to the APA makes clear that it is relied upon independently from the federal bankruptcy laws. *Id.* at ¶ 5 ("Counter-Defendant's actions were void under the Bankruptcy laws *and otherwise constituted* arbitrary and capricious actions under 5 U.S.C. § 706.") (emphasis added). Without question, this Court has subject matter jurisdiction, generally under 28 U.S.C. § 1331 and

specifically under 28 U.S.C. § 1334(b),[1] to rule on the Counterclaim's merits regarding the CFPB's alleged violation of the automatic stay under 11 U.S.C. § 362.

Accordingly, *Holder* is not at all on-point and this Court should reject CFPB's invitations to consider the jurisdiction question solely through the lens of the APA.

**D. Counter-Plaintiffs have the requisite standing because the CFPB infringed upon their property rights, causing them to suffer economic harm, for which redress from this Court upon a favorable decision is likely.**

CFPB then asserts that the Counterclaim must be dismissed because Counter-Plaintiffs lack Article III standing. Motion to Dismiss [ECF No. 56], pp. 11-12. Specifically, CFPB maintains that Counter-Plaintiffs have not been "injured." *Id.* at p. 11 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). CFPB, however, conveniently confines its one-sentence injury analysis to only the alleged seizure of Orion's assets. *Id.* (citing Counterclaim, [ECF No. 44] at ¶ 2). Counter-Plaintiffs allege not only

---

[1] To the extent CFPB may argue that these two jurisdictional statutes were not specifically referenced in the Counterclaim, it must be noted that this is not required to survive a Rule 12(b)(1) motion to dismiss. As long as the claim pleads facts from which federal jurisdiction may be inferred, it is enough. *Haray v. Blumenthal*, 555 F.2d 1113, 1115 n. 1 (2d Cir. 1977) ("When the complaint pleads facts from which federal jurisdiction may be inferred, however, the insufficiency of the jurisdictional allegation is not controlling, and the action need not be dismissed.") (citing, *inter alia*, 5 C. Wright & A. Miller, Federal Practice and Procedure § 1350, at 552 (1969)). This rule is in harmony with the settled principle that "[i]n considering a Rule 12(b)(1) motion, the court must construe the complaint broadly and liberally in conformity with the principle set forth in Rule 8(f) that '[a]ll pleadings shall be so construed as to do substantial justice.'" *Shared Network Techs., Inc. v. Taylor*, 669 F. Supp. 422, 425 (N.D. Ga. 1987) (quoting Fed. R. Civ. P. 8(f)).

that Orion's assets were seized, but also that Counter-Plaintiffs' personal property was seized, that CFPB continues to interfere with Counter-Plaintiffs' rights, that CFPB's actions caused Counter-Plaintiffs damages resulting *at least* in the loss of their business, and that Counter-Plaintiffs have been individually harmed. Counterclaim [ECF No. 44] at ¶¶ 2, 4, 5, 6, and 8 (emphasis added). At the motion to dismiss stage, these allegations must be taken as true. *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136 (citation omitted).

Counter-Plaintiffs' foregoing allegations of actual harm satisfy the "injury in fact" test for Art. III standing. Indeed, the alleged harms to Counter-Plaintiffs' rights recognized at common law – such as property, contract, and torts – have been held sufficient for standing purposes. *Tennessee Elec. Power Co. v. Tennessee Val. Auth.*, 306 U.S. 118, 137, 59 S. Ct. 366, 369 (1939). Similarly, "palpable economic injuries have long been recognized as sufficient to lay the basis for standing." *Sierra Club v. Morton*, 405 U.S. 727, 733-34, 92 S.Ct. 1361 (1972); *Comm. V. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing."). The wrongful seizure of Counter-Plaintiff's assets clearly resulted in palpable economic harm.[2] Hence, these allegations meet the "injury in fact"

---

[2] At this point, the economic injuries suffered by Counter-Plaintiff, Derin Scott, and his family at the CFPB's hands are no longer unsubstantiated allegations. Rather, in requesting modification of the Preliminary Injunction [ECF No. 42], Mr. Scott submitted a declaration wherein he testified under oath that the order has left him unable to pay for his reasonable living expenses and has forced him and his wife to submit resumes in search of alternative employment in order to provide for their six children. Motion to Modify Preliminary Injunction [ECF No. 54-1].

prerequisite for standing.[3]

CFPB also challenges Counter-Plaintiffs' standing on "redressability" grounds, but, again, limits its analysis to Counter-Plaintiffs' allegations of having lost their business. Motion to Dismiss [ECF No. 56] at pp. 11-12. This is another convenient strawman. Of course, Counter-Plaintiffs did not request, and do not expect that this Court "restore" its business to them. As discussed above, Counter-Plaintiffs' economic injuries flow from the improper asset seizure that covered not just Orion's assets, but also their own personal property. Counter-Plaintiffs alleged that the present controversy relates to the parties' respective legal rights in Counter-Plaintiffs' property, whether that property is part of the bankruptcy estate under federal bankruptcy laws, and whether it is subject to administration in that proceeding. Counterclaim [ECF No. 44] at ¶ 7. Counter-Plaintiffs also alleged that CFPB's actions violated protections of the automatic stay under 11 U.S.C. § 362 (*id.* at ¶ 3) and specifically requested declaratory relief that CFPB's actions were wrongful, and for a determination of the appropriate remedies to be applied. *Id.* at pp. 5-6. A decision favorable to Counter-Plaintiffs on *these* questions, rather than on the business restoration question that the CFPB created from whole cloth, is likely to redress the injuries Counter-

[3] CFPB also attempts to make a distinction between an asset seizure versus an asset freeze. Motion to Dismiss [ECF No. 56] at p. 11. But in the context of an injury/standing analysis, the distinction makes no difference. Whether the claimant is permanently denied access to his personal property via seizure, or denied access, with only the mere possibility of restored access, via a freeze, the infringement on his property rights and his injury is the same. It is also worth noting that CFPB fails to provide any authority in support of its argued distinction – where a federal court's standing conclusion regarding a sufficient "injury" turned on whether the claimant's assets were seized or merely frozen.

Plaintiffs suffered. This satisfies the relevant inquiry for the "redressability" element of Article III standing. *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136.

Lastly, CFPB believes that, even if Counter-Plaintiffs have met the constitutional requirements for standing under Article III, they must additionally establish standing under the APA. Motion to Dismiss [ECF No. 56] at p. 12. Counter-Plaintiffs are unaware of any authority, and CFPB fails to cite any, that requires a claimant to satisfy standing requirements under both Article III *and* the APA where, as here, a statutory basis for judicial review has been pled *independent* of the APA as discussed above. For the same reasons, this unsupported argument must also be rejected.

## III. CONCLUSION.

Counter-Plaintiffs' Counterclaim states a claim that is plausible on its face, as required by *Iqbal* and *Twombly*. Moreover, judicial review of CFPB's action is available under APA and otherwise. Finally, Counter-Plaintiffs have standing to maintain the claims alleged in the Counterclaim.

Wherefore, Defendants/Counter-Plaintiffs, Derin Scott and David Klein, and Relief Defendant/ Counter-Plaintiff, Shannon Scott, respectfully request entry of an Order denying Plaintiff/Counter-Defendant, Consumer Financial Protection Bureau's Motion to Dismiss [ECF No. 56], and granting such other and further relief as may be just and proper.

Respectfully submitted,

**FOX ROTHSCHILD LLP**
*Counsel for Defendants David Klein,*
*Derin Scott and Shannon Scott*
1225 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 446-3864

By: *s/ Jeffrey Cohen*
**Jeffrey Cohen**
Email: jcohen@foxrothschild.com
*(Admitted Pro Hac Vice)*

**and**

**FOX ROTHSCHILD LLP**
*Counsel for Defendants David Klein,*
*Derin Scott and Shannon Scott*
Esperante Building
222 Lakeview Ave, Suite 700
West Palm Beach, Florida 33401
Telephone: (561) 835-9600
**David A. Greene**
Florida Bar No. 87629
dgreene@foxrothschild.com
wpbeservice@foxrothschild.com
**Eric A. Bevan**
Florida Bar No. 115098
ebevan@foxrothschild.com

## CERTIFICATE OF SERVICE

I hereby certify that on **December 24, 2015**, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/David A. Greene*
COUNSEL

**SERVICE LIST**
**(Case No.: 1:15-CV-23070-COOKE/TORRES)**

**CARA PETERSEN, ESQ.**
Deputy Enforcement Director for Litigation

**JAMES SUGARMAN, ESQ.**
Assistant Litigation Deputy for Litigation

**LAURA SCHNEIDER, ESQ.**
(E-mail: laura.schneider@cfpb.gov)
(Phone: 202-435-7311)
**WHITNEY CASE, ESQ.**
(E-mail: whitney.case@cfpb.gov)
(Phone: 202-435-7371)
**ERIN MARY KELLY, ESQ.**
(Email: erin.kelly@cfpb.gov)
(Phone: 202-435-7367)
CONSUMER FINANCIAL PROTECTION BUREAU
1625 I Street, NW
Washington, DC 20006
Fax: (202) 435-7722

*Attorneys for Plaintiff*

**GARY OWEN CARIS, ESQ.**
(E-mail: gary.caris@dentons.com )
**LESLEY ANNE HAWES, ESQ.**
(E-mail: lesley.hawes@dentons.com)
DENTONS US LLP
300 South Grand Avenue, 14th Floor
Los Angeles, CA 90071
Telephone: (213) 668-1000

*Attorneys for Receiver Rob Evans & Assoc. LLC*
*(Admitted Pro Hac Vice)*

**MONICA L. IREL, ESQ.**
(E-mail: monica.irel@dentons.com)
DENTONS US LLP
10700 N. Kendall Drive, Suite 303
Miami, Florida 33176-1469
Telephone: (305) 670-4843
Facsimile: (305) 670-4846

*Attorneys for Receiver Rob Evans & Assoc. LLC*