**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 15-23070-Civ-COOKE/TORRES**

CONSUMER FINANCIAL PROTECTION BUREAU,
Plaintiff,

v.

ORION PROCESSING, LLC, a Texas limited liability company, d/b/a World Law Processing, Wld Credit Repair, and World Law Debt; FAMILY CAPITAL INVESTMENT & MANAGEMENT LLC, a Delaware limited liability company, a/k/a FCIAM Property Management; WORLD LAW DEBT SERVICES, LLC, a Delaware limited liability company; WORLD LAW PROCESSING, LLC, a Delaware limited liability company; DERIN SCOTT, an individual; DAVID KLEIN, an individual; and BRADLEY JAMES HASKINS, individually and d/b/a World Law Group, LLP, World Law Group America, LLP, WLD Price Global, Inc., World Law Forms and Mediation, and World Law South;

Defendants,

Shannon Scott, an individual,

Relief Defendant.

**STIPULATED FINAL JUDGMENT AND ORDER AGAINST DEFENDANTS DERIN SCOTT, DAVID KLEIN, AND RELIEF DEFENDANT SHANNON SCOTT**

Plaintiff, the Consumer Financial Protection Bureau ("Bureau") commenced this civil action on August 17, 2015 to obtain permanent injunctive relief, rescission or reformation of contracts, the refund of moneys paid, restitution, disgorgement or compensation for unjust enrichment, civil money penalties, and other equitable relief from Defendants (a) Orion Processing, LLC, a Texas limited liability company, d/b/a World

Law Processing, Wld Credit Repair, and World Law Debt; (b) Family Capital Investment & Management LLC, a Delaware limited liability company, a/k/a FCIAM Property Management; (c) World Law Debt Services, LLC, a Delaware limited liability company; (d) World Law Processing, LLC, a Delaware limited liability company; (e) Derin Scott, an individual; (f) David Klein, an individual; and (g) Bradley James Haskins, individually and d/b/a as World Law Group, LLP, World Law Group America, LLP, WLD Price Global, Inc., World Law Forms and Mediation, and World Law South. The Bureau brought this Complaint under sections 1031(a), 1036(a), 1054, and 1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a), 5564(a), and 5581, and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6102(c)(2), 6105(d), alleging Defendants violated the CFPA and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. pt. 310 in connection with the marketing and sale of debt relief services.

The Bureau and Defendants Derin Scott and David Klein ("Settling Defendants") and Relief Defendant Shannon Scott ("Relief Defendant") have agreed to entry of this Stipulated Final Judgment and Order ("Order") by this Court.

Therefore, it is **ORDERED and ADJUDGED** as follows:

## FINDINGS

1. This Court has jurisdiction over the parties and the subject matter of this action pursuant to 12 U.S.C. § 5565(a)(1) and 28 U.S.C. §§ 1331, 1345, and 1367.
2. Venue in the Southern District of Florida is proper under 28 U.S.C. § 1391(b) and (c) and 12 U.S.C. § 5564(f).
3. The Bureau, Settling Defendants, and Relief Defendant agree to entry of this Order to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.
4. The Complaint states claims upon which relief may be granted under the CFPA, 12 U.S.C. §§ 5531(a), 5536(a), 5564(a), and 5581, and the Telemarketing and Consumer Fraud and Abuse and Prevention Act, 15 U.S.C. §§ 6102(c)(2), 6105(d), and its implementing regulation, 16 C.F.R. part 310. The relief provided in this Order is appropriate and available pursuant to Sections 1054 and 1055 of the CFPA, 12

U.S.C. §§ 5564, 5565, and pursuant to the Telemarketing and Consumer Fraud and Abuse and Prevention Act, 15 U.S.C. § 6102(c).

5. Settling Defendants and Relief Defendant waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

6. Entry of this Order is in the public interest.

7. Settling Defendants neither admit nor deny the allegations in the Complaint, except as specifically stated herein, but do not waive any privilege.

8. Settling Defendants are each a "covered person," "related person," and a "service provider" as those terms are defined by the CFPA, 12 U.S.C. § 5481(6)(A), (19), (25), and (26).

9. During the Relevant Period, Defendants offered or provided financial advisory services, including services to assist consumers settle debts. 12 U.S.C. § 5481(15)(A)(viii).

10. Defendants' business included inducing the purchase of financial advisory services by use of one or more telephones and involved more than one interstate telephone call. Defendants are "sellers" or "telemarketers" of a "debt relief service," who engage in "telemarketing," as defined in the TSR. 16 C.F.R. § 310.2.

11. In the course of telemarketing debt relief services from October 27, 2010 to the Effective Date, Defendants requested or received payment of fees or consideration from consumers for debt relief services before: (1) they had renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the consumer; and (2) the consumer had made at least one payment pursuant to that agreement.

12. During the Relevant Period, the Defendants' operation received approximately $106,813,049 in payments and fees, a substantial portion of which were Advance

Fees, from Affected Consumers. These payments and fees were divided among the multiple participants.

13. Defendants conducted the business practices described in paragraphs 8-12 above through cooperation among the Corporate and Individual Defendants, which operated together to offer and provide debt relief services to consumers through the World Law debt relief program. In this joint operation, Defendants often used overlapping employees and offices, commingled funds, and shared operations and proceeds.

14. The Court finds that Defendants' acts and practices described above violate the TSR, 16 C.F.R. § 310.4(a)(5)(i).

15. Relief Defendant Shannon Scott has received, directly or indirectly, funds or other assets from Defendants that are traceable to funds obtained from Defendants' customers through the acts or practices described in paragraphs 8-13 above. Relief Defendant Shannon Scott is not a bona fide purchaser with legal and equitable title to Defendants' customers' funds or other assets.

16. All pending motions by Settling Defendants and Relief Defendant are hereby denied as moot.

## DEFINITIONS

The following definitions apply to this Order:

17. "**Advance Fee**" means any fee or consideration requested or received by a Debt Relief Service Provider from a consumer for any Debt Relief Service, whether directly or indirectly, that occurs before:

    a. the Debt Relief Service Provider has renegotiated, settled, reduced, or otherwise altered the terms of a debt pursuant to a settlement agreement, debt management plan, or other valid contractual agreement executed by the Consumer; and

    b. the Consumer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the Consumer and the creditor or debt collector.

18. "**Affected Consumers**" means any consumer who paid an Advance Fee or any other fees to Defendants or their officers, agents, servants, employees, or attorneys for Debt Relief Products or Services between July 1, 2010 and the Effective Date.

19. "**Assets**" means any legal or equitable interest in, right to, or claim to any real, personal, or intellectual property owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by any Defendant or Relief Defendant, wherever located, whether in the United States or abroad. This includes, but is not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, cash, and trusts, including, but not limited to any trust held for the benefit of any Defendant, Relief Defendant, any of the Individual Defendants' minor children, or any of the Individual Defendants' spouses.

20. "**Assisting Others**" includes, but is not limited to:

   a. Consulting in any form whatsoever;
   b. Providing paralegal or administrative support services;
   c. Performing customer service functions including, but not limited to, receiving or responding to consumer complaints;
   d. Formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication;
   e. Formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;
   f. Providing names of, or assisting in the generation of, potential customers;
   g. Performing marketing, billing, or payment services of any kind; and

h. Acting or serving as an owner, officer, director, manager, or principal of any entity.

21. "**Bankruptcy Proceeding**" means *In re Orion Processing LLC,* Case No. 15-10279 currently pending in the United States Bankruptcy Court, Western District of Texas, Austin Division.

22. "**Chapter 7 Trustee**" means the Trustee appointed over Defendant Orion Processing, LLC by the United States Bankruptcy Court, Western District of Texas, Austin Division in the Bankruptcy Proceeding, and any successor.

23. "**Consumer Financial Product or Service**" is synonymous in meaning and equal in scope to the definition of the term in Section 1002(5) of the CFPA, 12 U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA, includes, but is not limited to:

a. Extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit (other than solely extending commercial credit to a person who originates consumer credit transactions);

b. Providing financial advisory services to consumers on individual financial matters or relating to proprietary financial products or services, including providing credit counseling to any consumer or providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure;

c. Collecting, analyzing, maintaining, or providing consumer report information or other account information, including information relating to the credit history of consumers, used or expected to be used in connection with any decision regarding the offering or provision of a Consumer Financial Product or Service; or

d. Collecting debt related to any Consumer Financial Product or Service.

24. "**Debt Relief Product or Service**" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more creditors or

debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a person to a creditor or debt collector.

25. "**Debt Relief Service Provider**" means any Person that offers or provides any Debt Relief Product or Service.

26. "**Defendants**" means the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known;

    a. "**Corporate Defendants**" means: Orion Processing, LLC d/b/a World Law Processing, Wld Credit Repair and World Law Debt (collectively, "Orion") and its successors and assigns; Family Capital Investment & Management LLC a/k/a FCIAM Property Management ("FCIAM") and its successors and assigns; World Law Debt Services, LLC and its successors and assigns; and World Law Processing, LLC and its successors and assigns.

    b. "**Individual Defendants**" means Derin Scott, David Klein, and Bradley Haskins, collectively, or in any combination, and each of them by any other names by which they might be known;

    c. "**Relief Defendant**" means Shannon Scott individually and by any other name by which she might be known;

    d. "**Settling Defendants**" means Derin Scott and David Klein collectively, or in any combination, and each of them by any other names by which they might be known.

27. "**Effective Date**" means the date on which the Order is issued.

28. "**Enforcement Director**" means the Assistant Director for the Office of Enforcement for the Consumer Financial Protection Bureau, or his/her delegee.

29. "**Receiver**" means Robb Evans & Associates LLC.

30. "**Related Consumer Action**" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendant based on substantially the same facts as described in the Complaint.

31. "**Relevant Period**" includes the period from July 1, 2010 to the Effective Date.

32. "**Telemarketing**" means any plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

## ORDER

### Conduct Provisions

### I.
### PERMANENT BAN ON TELEMARKETING AND DEBT RELIEF PRODUCTS OR SERVICES

It is **ORDERED** that:

33. Settling Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who have actual notice of this Order, whether acting directly or indirectly, are permanently restrained from any of the following:

   a. Participating in telemarketing or assisting others engaged in telemarketing any Consumer Financial Product or Service;

   b. Advertising, marketing, promoting, offering for sale, selling, or providing any Debt Relief Product or Service;

   c. Assisting others in advertising, marketing, promoting, offering for sale, selling, or providing any Debt Relief Product or Service; and

   d. Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any person engaged in or assisting others in advertising, marketing, promoting, offering for sale, selling, or providing any Debt Relief Product or Service.

### II.
### PROHIBITION ON DECEPTIVE PRACTICES

It is **FURTHER ORDERED** that:

34. Settling Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of this Order whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for

sale, sale, or performance of any Consumer Financial Product or Service may not misrepresent, or assist others in misrepresenting, expressly or impliedly:

a. Any aspect of any Consumer Financial Product or Service, including but not limited to, the amount of savings a consumer will receive from purchasing, using, or enrolling in such Consumer Financial Product or Service;
b. The total costs to purchase, receive, or use, or the quantity of any Consumer Financial Product or Service, including that there will be no charge for all or a portion of such service;
c. Any material restriction, limitation, or condition to purchase, receive, or use any Consumer Financial Product or Service;
d. Any aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for any Consumer Financial Product or Service, including but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;
e. The income, profits, sales, or savings likely to be achieved from any Consumer Financial Product or Service;
f. The terms or rates that are available for any loan or other extension of credit;
g. Any person's ability to improve or otherwise affect a consumer's credit record, credit history, or credit rating or ability to obtain credit;
h. That a consumer will receive legal representation or services from an attorney duly licensed to practice law;
i. Any material aspect of the performance, efficacy, nature, or central characteristic of any Consumer Financial Product or Service; and
j. Any other fact material to consumers concerning any Consumer Financial Product or Service.

35. In addition, Settling Defendants, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, or sale of any Consumer Financial Product or Service, are hereby permanently restrained and enjoined from making any representation or assisting others in making any

representation, expressly or by implication, about the benefits, performance, or efficacy of any Consumer Financial Product or Service, unless, at the time such representation is made, such Settling Defendant possesses and relies upon competent and reliable evidence that substantiates that the representation is true.

36. In addition, Settling Defendants, whether acting directly or indirectly, are permanently restrained from offering or providing any Consumer Financial Product or Service for which a state license, registration, permit, bonding or other regulatory authority is required, unless such Settling Defendant first obtains such authority.

## III.

## PROHIBITED USE OF CUSTOMER INFORMATION

It is **FURTHER ORDERED** that:

37. Settling Defendants, and their officers, agents, servants, employees, and attorneys who receive actual notice of this Order, whether acting directly or indirectly, may not disclose, use, or benefit from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Defendants obtained before the Effective Date in connection with Consumer Financial Products or Services or Debt Relief Products or Services offered by Defendants.

It is **FURTHER ORDERED** that:

38. The Settling Defendants, and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from attempting to collect, collecting, selling, or assigning, or otherwise transferring any right to collect payment from any consumer who purchased or agreed to purchase Debt Relief Products or Services from Defendants. *However*, customer information may be disclosed if requested by a government agency or required by law, regulation, court rules or order.

## IV.

## COOPERATION WITH THE BUREAU

It is **FURTHER ORDERED** that:

39. Settling Defendants must cooperate fully and in good faith with the Bureau in connection with this action or any subsequent investigation or litigation related to or associated with the conduct described in the Bureau's Complaint, including related to the Bankruptcy Proceeding. Settling Defendants must provide truthful and complete information, evidence, and testimony. Settling Defendants must appear for interviews, conferences, pretrial discovery, review of documents, deposition, trial, or any other proceedings that the Bureau may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

40. Settling Defendants must cooperate fully to help the Bureau determine the identity, location and contact information of any Defendant and any person who might have contact information for any Defendant. Settling Defendants must provide such information in their or their agents' possession or control within 14 days of receiving a written request from the Bureau.

41. Settling Defendants must cooperate fully to help the Bureau determine the identity, location, contact information and amount of injury sustained by each Affected Consumer. Settling Defendants must provide such information in their or their agents' possession or control within 14 days of receiving a written request from the Bureau.

## V.

## ORDER TO PAY REDRESS

It is **FURTHER ORDERED** that:

42. A judgment for monetary relief is entered in favor of the Bureau and against Settling Defendants, jointly and severally, in the amount of $106,813,049 for the purpose of providing redress to Affected Consumers. However, full payment of this judgment will be suspended upon satisfaction of the obligations in paragraphs 43 - 47, 52 - 53, and subject to Section VII of this Order.

a. Of this judgment for monetary relief, Relief Defendant shall be jointly and severally liable for the amount of $580,133, such amount also being for the purpose of providing redress to Affected Consumers. However, full payment of Relief Defendant's portion of this judgment will be suspended upon satisfaction of the obligations in paragraphs 43 - 47, and subject to Section VII of this Order.

43. Settling Defendants and Relief Defendant hereby grant to the Bureau all rights and claims they have to any frozen assets and shall forfeit any rights to those funds, including but not limited to assets in accounts at:

a. Space Coast Credit Union in the following accounts:

   i. Account Number XXXXX0589 in the name of Shannon Scott;

   ii. Account Number XXXXX0594 in the name of Shannon Scott;

   iii. Account Number XXXXX0668 in the name of Shannon Scott and Zain Scott;

   iv. Account Number XXXXX0670 in the name of Shannon Scott and Laken Scott;

   v. Account Number XXXXX0602 in the name of Shannon Scott and Kalea A. Scott; and

   vi. Account Number XXXXX0584 in the name of Micah Scott.

   Within ten (10) business days from receipt of a copy of this Order by any means, including but not limited to via facsimile or email, Space Coast Credit Union shall transfer to the Bureau or its designated agent all funds held in the frozen accounts listed in subparagraphs (i) through (vi) above by wire transfer to the Bureau or to the Bureau's agent and according to the Bureau's wiring instructions.

b. Connect Credit Union in Account Number XXXXX02688 in the name of Shannon Scott. Within ten (10) business days from receipt of a copy of this Order by any means, including but not limited to via facsimile or email, Connect Credit Union shall transfer to the Bureau or its designated agent all funds held in Account Number XXXXX02688 in the name of Shannon Scott by wire transfer to the Bureau or to the Bureau's agent and according to the Bureau's wiring instructions.

c. Wells Fargo Bank in Account Number XXXXX6897 in the name CSCS, LLC, which is an account owned and controlled by Settling Defendant Klein. Within ten (10) business days from receipt of a copy of this Order by any means, including but not limited to via facsimile or email, Wells Fargo Bank shall transfer to the Bureau or its designated agent all funds held in Account Number XXXXX6897 in the name CSCS, LLC, by wire transfer to the Bureau or to the Bureau's agent and according to the Bureau's wiring instructions.

44. Settling Defendant David Klein also hereby grants to the Bureau all rights and claims he has to the assets currently held in the following accounts at Wells Fargo Bank and shall forfeit any rights to the funds: Account Numbers XXXXX4293, XXXXXX2941, and XXXXXX0908, all in the name National Integrated Solutions;

45. To the extent Settling Defendant Scott has not already done so, Settling Defendant Scott is ordered to relinquish any interest in and transfer and relinquish to Receiver, or to its designated agent, possession, custody, and control of the following assets within seven (7) days of entry of this Order, unless otherwise stated:

a. Dominion and all legal and equitable right, title, and interest in, as well as any accounts receivable from, the following entities, their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known, whether those rights, titles, interest, and amounts receivable are held by one or more Defendants: Orion Limo Services, LLC; Psamathe Sands, LLC; Global Energy Partners, LLC; GNS Frac, LLC; Prop Transport & Trading LLC; 10K International LLC; All Things Energy, LLC; Athlete Entertainment Group, LLC; Seamless Human; Appz, LLC DBA App Ventures; and 9011 Mountain Ridge Dr., LLC;

b. All funds in the following accounts:

i. Funds held in Account Number XXXXXX2083 at IBC Bank in the name of All Things Energy LLC;

ii. Funds held in Account Number XXXXXX2641 at Bank of America in the name of Appz, LLC DBA App Ventures;

iii. Funds held in Account Number XXXXX9966 at Bank of America in the name Orion Limo Services, LLC. Within ten (10) business days from receipt of a copy of this Order by any means, including but not limited to via facsimile or email, Bank of America shall transfer to the Receiver or its designated agent all funds held in Account Number XXXXX9966 in the name Orion Limo Services, LLC.

c. The following vehicles including certificates of title:

i. 2007 Cadillac Escalade SUV;

ii. 2007 Mercedes Benz S600;

iii. 1995 Range Rover County LWB SUV

iv. 2007 MB Sport B52 boat;

v. 1999 Malibu LX boat;

vi. Pair of 2007 Polaris Vintage Jet Skis;

vii. Polaris 4-Wheeler;

viii. 2004 Kawasaki KDX Motorcross Bike;

ix. 2004 Kawasaki KX60 Motorcross Bike;

x. 2006 Honda CFR Motorcross Bike;

xi. 2012 Husqvarna Zero turn Lawn Mower;

xii. 4 2012 mini ATVs;

xiii. Triathalon racing bicycles; and

d. The building located at 9011 Mountain Ridge Drive, Austin, Texas and any personal property inside the building.

*Provided, however*, that the Receiver may abandon, without further court order, any such Asset set forth in this paragraph or otherwise it deems in its discretion to be of inconsequential or no value.

46. Settling Defendant Scott shall cooperate fully with the Receiver and shall execute any instrument or document presented by the Receiver, and take any other actions the Receiver deems necessary or appropriate to effect the transfers required by Paragraph 45. All of the property set forth in paragraph 45 shall constitute Assets of the receivership estate.

47. Settling Defendants and Relief Defendant hereby grant to the Bureau all rights and claims they have to any other frozen Assets currently in the possession, custody or control of the Receiver, and shall forfeit any rights to the funds in the receivership estate, including but not limited to:

    a. All funds held, obtained, or to be obtained by the Receiver since the inception of the receivership whether through this Stipulated Order or otherwise.

48. With regard to any redress that Settling Defendants and Relief Defendant pay under this Section V (Order to Pay Redress), if Settling Defendants or Relief Defendant receive, directly or indirectly, any reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, or if Settling Defendants or Relief Defendant secure a tax deduction or tax credit with regard to any federal, state, or local tax, Settling Defendants or Relief Defendant must: (a) immediately notify the Enforcement Director in writing, and (b) within ten (10) days of receiving the funds or monetary benefit, Settling Defendants or Relief Defendant must transfer to the Bureau the full amount of such funds or monetary benefit (Additional Payment) to the Bureau or to the Bureau's agent according to the Bureau's wiring instructions. After the Bureau receives the Additional Payment, the amount of the suspended judgment referenced in Paragraph 42 will be reduced by the amount of the Additional Payment and the Additional Payment will be applied toward satisfaction of the monetary judgment entered in Paragraph 42.

49. Any funds received by the Bureau pursuant to this Order will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used to provide redress to Affected Consumers for the fees they paid to Defendants, and for any attendant expenses for the administration of any such redress.

50. If the Bureau determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or otherwise inappropriate, or if funds remain after redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as disgorgement. Settling Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this paragraph.

51. Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

## VI.

## ORDER TO PAY CIVIL MONEY PENALTIES

It is **FURTHER ORDERED** that:

52. Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint and continuing until the Effective Date, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Settling Defendant Derin Scott must pay a civil money penalty of $1 to the Bureau; and Settling Defendant David Klein must pay a civil money penalty of $1 to the Bureau. These nominal civil penalties are based on Settling Defendants' limited ability to pay as attested to in all financial statements and supporting documents that Settling Defendants submitted to the Bureau, and Settling Defendant Scott's and Settling Defendant Klein's oral testimony provided on December 15, 2015 and December 22, 2015, respectively.

53. Within 10 days of the Effective Date, Settling Defendants must each pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

54. The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

55. Settling Defendants and Relief Defendant must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Settling Defendants and Relief Defendant may not:

    a. Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

    b. Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

56. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Settling Defendants may not argue that they are entitled to, nor may Settling Defendants benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund (Penalty Offset). If the court in any Related Consumer Action grants such a Penalty Offset, Settling Defendants must, within 30 days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

57. The civil penalty imposed by this Order represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and, thus, as to each Settling Defendant, it is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

## VII.

## EFFECT OF MISREPRESENTATION OR OMISSION REGARDING FINANCIAL CONDITION

It is **FURTHER ORDERED** that:

58. The suspension of the monetary judgment entered in Section V of this Order is expressly premised on the truthfulness, accuracy, and completeness of Settling Defendants' and Relief Defendant's financial statements and supporting documents, all of which Settling Defendants and Relief Defendant assert are truthful, accurate, and complete, and which include:

    a. Financial Statement of Derin and Shannon Scott, including the attachments, signed on September 11, 2015 and submitted to the Bureau on or about October 1, 2015;

    b. Financial Statement of David Klein, including the attachments, signed on September 1, 2015 and submitted to the Bureau on or about September 20, 2015;

    c. Updated Financial Statement of David Klein, including the attachments, signed on May 23, 2016, and submitted to the Bureau on or about May 24, 2016;

d. Updated Financial Statement of Derin and Shannon Scott, including the attachments, submitted to the Bureau on or about May 24, 2016, and signed on July 15, 2016; and

e. Derin Scott's and David Klein's oral testimony provided on December 15, 2015 and December 22, 2015, respectively.

59. If upon motion by the Bureau, the Court determines that any Settling Defendant or Relief Defendant has failed to disclose any material asset or that any of his/her financial statements or oral testimony contain any material misrepresentation or omission, including materially misstating the value of any asset, the Court shall terminate the suspension of the monetary judgment entered in Section V and without further adjudication, shall reinstate the judgment entered in Section V of this Order and the full judgment of $106,813,049 shall be immediately due and payable, less any amounts paid to the Bureau under Section V of this Order.

60. If the Court terminates the suspension of the monetary judgment under this Section, the Bureau will be entitled to interest on the judgment, computed from the date of entry of this Order, at the rate prescribed by 28 U.S.C. § 1961, as amended, on any outstanding amounts not paid.

61. Provided, however, that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court; and, provided further, that proceedings instituted under this provision would be in addition to, and not in lieu of any other civil or criminal remedies as may be provided by law, including any other proceedings that the Bureau may initiate to enforce this Order.

## VIII.

## ADDITIONAL MONETARY PROVISIONS

It is **FURTHER ORDERED** that:

62. In the event of any default on Settling Defendants' and Relief Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

63. Settling Defendants and Relief Defendant must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Settling Defendants or Relief Defendant.

64. The facts alleged in the Bureau's Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by the Bureau to enforce this Order or its rights to any payment or monetary judgment under the Order, such as a non-dischargeability complaint in any bankruptcy case.

65. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

66. Under 31 U.S.C. § 7701, Settling Defendants and Relief Defendant, unless they have already done so, must furnish to the Bureau any taxpayer identifying numbers associated with them and their assets, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

67. Within 30 days of the entry of a final judgment, Order, or settlement in a Related Consumer Action, Settling Defendants and/or Relief Defendant must notify the Enforcement Director of the final judgment, Order, or settlement in writing. That notification must fully identify the matter, indicate the amount of redress, if any, that Settling Defendants and Relief Defendant paid or are required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

68. Under Section 604(a)(I) of the Fair Credit Reporting Act, 15 U.S.C.§ 168l b(a)( 1), any consumer reporting agency may furnish a consumer report concerning any Settling Defendant and Relief Defendant to the Bureau, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## IX.

## LIFTING OF ASSET FREEZE

IT IS **FURTHER ORDERED** that:

69. The freeze on the Assets of Settling Defendants and Relief Defendant Shannon Scott is modified to permit the payments and other transfers of Assets identified in Sections V and VI of this Order. Upon completion of all payment and other obligations identified Sections V and VI of this Order, the freeze of the Assets pursuant to the Preliminary Injunction entered on September 14, 2015 ("September 14, 2015 PI") (ECF No. 42), shall be dissolved.

## Compliance Provisions

## X.

## REPORTING REQUIREMENTS

It is **FURTHER ORDERED** that:

70. Settling Defendants must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against any Settling Defendants; or a change in any Settling Defendants' name or address. Settling Defendants must provide this notice, if practicable, at least 30 days before the development, but in any case no later than 14 days after the development.

71. Within 7 days of the Effective Date, each Settling Defendant must:

    a. Designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with such Settling Defendant;

    b. Identify all businesses for which Settling Defendant is the majority owner, or that such Settling Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

c. Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

d. Identify each of their telephone numbers and all email, Internet, physical, and postal addresses, including all residences;

e. Describe in detail each Settling Defendant's involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including Settling Defendant's title, role, responsibilities, participation, authority, control, and ownership.

72. Each Settling Defendant must report any change in the information required to be submitted under Paragraph 71 above at least 30 days before the change or as soon as practicable after the learning about the change, whichever is sooner.

73. Within 90 days of the Effective Date, and again one year after the Effective Date, each Settling Defendant must submit to the Enforcement Director an accurate written compliance progress report sworn under penalty of perjury ("Compliance Report"), which, at a minimum:

a. Describes in detail the manner and form in which such Settling Defendant has complied with this Order; and

b. Attaches a copy of each Order Acknowledgment obtained under Section XI, unless previously submitted to the Bureau.

74. After the one-year period, each Settling Defendant must submit to the Enforcement Director additional Compliance Reports within 14 days of receiving a written request from the Bureau.

## XI.

## ORDER DISTRIBUTION AND ACKNOWLEDGMENT

It is **FURTHER ORDERED** that:

75. Within 7 days of the Effective Date, each Settling Defendant must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

76. Within 30 days of the Effective Date, each Settling Defendant, for any business for which he is the majority owner or which he directly or indirectly controls, must

deliver a copy of this Order to each of its board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

77. For 5 years from the Effective Date, each Settling Defendant, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section X (Reporting Requirements), any future board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities, and any entity or regulatory body from whom he seeks a business license.

78. Each Settling Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

## XII.
## RECORDKEEPING

It is **FURTHER ORDERED** that:

79. Each Settling Defendant must create, for at least ten (10) years from the Effective Date, the following business records for any business involving consumer financial products or services for which each Settling Defendant, individually or collectively with any other Defendant, is a majority owner or which he directly or indirectly controls:

a. All documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.

b. Copies of all sales scripts; training materials; advertisements; websites; and other marketing materials; and including any such materials used by a third party on behalf of Defendant.

c. All documents regarding each individual consumer showing his or her enrollment in that consumer financial product or service, including: the

consumer's name, address, phone number, email address; amount paid, quantity of the product or service purchased, description of the product or service purchased, the date on which the product or service was purchased, a copy of any promotional or welcome materials provided, and, if applicable, the date and reason consumer left the program.

d. Accounting records showing the gross and net revenues generated by the all consumer financial products or services, and all costs incurred in generating those revenues;

e. All consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any responses to those complaints or requests.

f. Records showing, for each employee providing services, that person's: name; telephone number; email, physical, and postal address; job title or position; dates of service; and, if applicable, the reason for termination.

g. Records showing, for each service provider providing services related to relevant consumer financial product or service, the name of a point of contact, and that person's telephone number; email, physical, and postal address; job title or position; dates of service; and, if applicable, the reason for termination.

80. Each Settling Defendant must retain the documents identified in Paragraph 79 for at least five (5) years after its creation.

81. Each Settling Defendant must make the documents identified in Paragraph 79 available to the Bureau upon the Bureau's request.

## XIII.

## NOTICES

It is **FURTHER ORDERED** that:

82. Unless otherwise directed in writing by the Bureau, Settling Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. Orion Processing, et al.*, Case No. 15-23070-Civ-COOKE/TORRES," and send them either:

By overnight courier (not the U.S. Postal Service) to:
Assistant Director for Enforcement
Consumer Financial Protection Bureau
ATTENTION: Office of Enforcement
1625 Eye Street, N.W.
Washington D.C. 20006; or

By first-class mail to the below address and contemporaneously by email
To: Enforcement_Compliance@cfpb.gov:

Assistant Director for Enforcement
Consumer Financial Protection Bureau
ATTENTION: Office of Enforcement
1700 G Street, N.W.
Washington D.C. 20552

**XIV.**

**COMPLIANCE MONITORING**

It is **FURTHER ORDERED** that:

83. To monitor Settling Defendants' compliance with this Order, within fourteen [14] days of receipt of a written request from the Bureau, each Settling Defendant must submit to the Bureau additional compliance reports or other requested information, which must be sworn to under penalty of perjury; provide sworn testimony; or produce documents. The Bureau is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

84. For purposes of this Section, the Bureau may communicate directly with each Settling Defendant, unless such Settling Defendant retains counsel related to these communications.

85. Each Settling Defendant must permit Bureau representatives to interview any employee or other person affiliated with such Defendant who has agreed to such an interview. The person interviewed may have counsel present.

86. The Bureau is authorized by this Order to use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to the Settling Defendants or any individual or entity affiliated with the Settling Defendants, without the necessity of identification or prior notice. Nothing

in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

## XV.

## RETENTION OF JURISDICTION

It is **FURTHER ORDERED** that:

87. The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

## XVI.

## DEFENDANTS' COUNTERCLAIM FOR DECLARATORY JUDGMENT

It is **FURTHER ORDERED** that:

88. Defendants' Counterclaim for Declaratory Judgment is dismissed with prejudice.

## XVII.

## FINAL JUDGMENT AND ORDER

89. The Bureau and Settling Defendants have consented to the terms and conditions of this Order as set forth above and have consented to the entry thereof.

**DONE and ORDERED** in Chambers, in Miami, Florida, this 1st day of August 2016.

Marcia G. Cooke

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*